**Roscoe JAMES, Individually and as Administrator of the Estate of Rebecca G. James, Plaintiff,**

v.

**HOME CONSTRUCTION COMPANY, INC., Defendants.**

Civ. A. No. 77–324–H.

United States District Court, S. D. Alabama, S. D.

Aug. 11, 1978.

H. Diana Hicks, Mobile, Ala., for plaintiff.

Richard L. Thiry, Mobile, Ala., for defendants.

## ORDER

HAND, District Judge.

This matter is presently before the Court on the defendants' motion to dismiss and, in the alternative, on the defendants' motion in opposition to the maintenance of this lawsuit as a class action.

In their motion to dismiss, the defendants contend that the complaint and the amended complaint failed to state a claim upon which relief can be granted, alleging that the plaintiff has no individual claim on the ground that the claim he seeks to advance did not survive the death of his decedent mother.

The facts under which the claim arises are not in dispute. Rebecca G. James, the plaintiff's decedent, contracted with and received credit from the defendants on June 11, 1973 in order to make certain repairs and additions to her home. The additions and repairs were made, although the work performed and the quality of the workmanship is in dispute. Although Rebecca James was told by defendants' agent on June 11, 1973 that the cost would be $5,322.00, she received a payment on August 10, 1973 reflecting that she owed $7,509.60 on the deferred payment price. Prior to her death on July 18, 1976 Rebecca James made thirty-six (36) monthly payments of $125.16 each in accordance with the terms of her credit extension. The plaintiff, as administrator of Rebecca James' estate made two monthly payments in the sum of $125.16 each, one payment in the sum of $75.00, and another in the sum of $100.00. Another payment was made by a third party in the amount of $425.64, bringing the sum paid on the contract to $5,356.72. On May 30, 1977, the plaintiff, through his attorney, gave notice to the defendants of rescission and cancellation of the contract and demanded payment of all monies due to him under federal and state statutes.

Following this notice, the plaintiff initiated this lawsuit seeking relief under the Truth in Lending Act, Title 15, U.S. C.A., § 1635 and under Title 5, § 323 of the Alabama Code (1958) [now *Alabama Code*, § 5-19-12 (1975)]. The complaint also sought recovery for common law breach of contract and for common law fraud. Since the claim under section 1635 is the only one upon which federal jurisdiction may be predicated, resolution of its propriety controls this Court's jurisdiction over the other pendent claims.

The thrust of the defendants' argument is that the plaintiff has no claim since the contract at issue was entered into between his decedent and the defendants, and the plaintiff was in no way involved in the agreement. It is clear at the outset, as the defendants contend, that the plaintiff stands in no better position than any other subsequent titleholder to the contracting party, since under Alabama law title to the property in question descended to him instantly at the death of his decedent. *Jones v. Ball,* 320 So.2d 665 (Ala.1975); *Davis v. Davis,* 263 Ala. 42, 81 So.2d 314 (1955). Having ascertained the plaintiff's position, the terms of the statute must be considered. The plaintiff's claim is predicated upon Title 15, U.S.C.A., § 1635, which provides, in pertinent part, that:

(a) . . . in the case of any consumer credit transaction in which a security in-

terest is retained or acquired in any real property which is used or expected to be used as the residence of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the disclosures required under this section and all other material disclosures required under this part, whichever is later, by notifying the creditor . . . of his intention to do so. . . .

Clearly section 1635 grants the right of rescission only to the obligor, and regulation Z [12 C.F.R. § 226.9] appears to support this view by limiting the regulations surrounding rescindable transactions to "customers". This conclusion is buttressed by rescission cases in which rescission has been enforced on behalf of obligors, *Sosa v. Fite,* 498 F.2d 114, (5th Cir. 1974), borrowers, *Ljepava v. M.L.S.C. Properties, Inc.,* 511 F.2d 935 (9th Cir. 1975), and purchasers, *Littlefield v. Flanagan & Company,* 498 F.2d 1133 (10th Cir., 1974). However, none of these cases have considered whether a successor to an obligor could enforce such obligor's rights of rescission.

■ The purpose of the Truth-In-Lending legislation, embodied in section 1601 is to allow the "consumer" to "compare more readily the various credit terms available to him and avoid the uninformed use of credit." 1968 *United States Code Congressional & Administrative News,* pp. 1962, 1979. The accomplishment of this purpose would not seem to require, in this Court's opinion, extension of the rescission remedy to a successor obligor who never intended to engage in comparison of various credit terms. Throughout the legislative history of the Act the Congressmen and the President talked in terms of protecting the consumer, and implicit throughout is the definition of consumer as one who goes credit shopping, not one who takes encumbered property by virtue of state intestacy laws. On this basis, the Court is of the opinion that the motion to dismiss is due to be and the same is hereby GRANTED. Having reached this conclusion, the Court does not reach the question whether common law survival rules apply to this action.

■ Dismissal of the plaintiff's claim does not, however, serve to extinguish the class claims. *Satterwhite v. City of Greenville,* 549 F.2d 347 (5th Cir. 1977). The defendants take the position that class actions are not warranted by the language of section 1635, and the Court agrees. Under the rescission procedures set out in section 1635, an obligor to rescind must first notify the creditor of his intention to rescind within certain specified time limits. Such notification by the obligor serves to eliminate any liability on the part of the obligor for any finance or other charge, and it voids any security interest given by the obligor. Additionally, within ten days of receipt of such notice of rescission, the creditor is required to return to the obligor any money or property given by the obligor and to do various other things. This appears to the Court to be a purely personal remedy, but the plaintiff contends that one obligor can put these matters into motion for an entire class of people merely by filing an individual notice. From a reading of the law and the cases the Court is convinced that such a class remedy is not available under section 1635 and that the class claims are therefore due to be and the same are hereby DISMISSED.

A final issue is the motion to intervene filed by Leola Wiggins on February 28, 1978. The basis for her intervention is that she has "an interest relating to the transactions which are the subject of this action and she is so situated that disposition of this action may as a practical matter impair or impede her ability to protect that interest." The purported intervenor admits that her time for filing rescission expired on October 28, 1977, but she contends that the James notice, purportedly in behalf of the class of persons of which Leola Wiggins is a member, should be construed to abrogate her notice requirement under section 1635. Since the Court has concluded, *supra,* that the rescission remedy is personal and cannot be extended to a class, the Court is con-

vinced that this motion to intervene is due to be and the same is hereby DENIED.