George M. CLEMMER, Patricia Clemmer
and Robert M. Burroughs,
Trustee, Plaintiffs,

v.

LIBERTY FINANCIAL PLANNING,
INC., Defendant.

No. C–C–77–178.

United States District Court,
W. D. North Carolina,
Charlotte Division.

Feb. 12, 1979.

Richard M. Mitchell, Edmund Pickup,
Mitchell & Matus, Charlotte, N. C., for
plaintiffs.

Richard M. Pearman, Jr., Greensboro, N. C., for defendant.

## MEMORANDUM OF DECISION AND ORDER

McMILLAN, District Judge.

This action was brought under the Truth-in-Lending Act, 15 U.S.C. § 1601 *et seq.* (and Regulation Z, 12 C.F.R. § 226, promulgated pursuant to 15 U.S.C. § 1604) for rescission of a loan transaction. The parties stipulated to the authenticity of the documents involved and informed the court that there were no questions of fact which needed to be decided by a jury, and that the remaining questions of law could be decided by the court. Arguments by counsel on all issues were heard on December 11, 1978.

On October 9, 1973, the defendant Liberty Financial Planning, Inc. made a loan to plaintiffs George and Patricia Clemmer. A copy of the loan contract, entitled "COMBINED STATEMENT, NOTE, SECURITY AGREEMENT, DISBURSEMENT SCHEDULE AND ELECTION AS TO INSURANCE PERTAINING TO A LOAN," is attached as Exhibit "A" to this order. The defendant obtained security interests in the Clemmer house, in all household furnishings and appliances, and in two cars. The security interest in the Clemmer's house was evidenced by a second deed of trust, but the loan proceeds were not used to purchase the house. The defendant also obtained a security interest in the home of Frank and Martha Watson, parents of Patricia Clemmer.

In 1974 the Clemmers filed a wage-earner proceeding under Chapter XIII of the Bankruptcy Act in the Western District of North Carolina. For reasons unimportant to this case, the proceeding was refiled on March 3, 1977. On or about October 3, 1977, the wage-earner proceeding was converted to a straight bankruptcy.

The Clemmers were apparently dissatisfied with the loan transaction, and on May 13, 1977, wrote a letter to defendant rescinding the loan. The rescission letter was received by defendant on May 17, 1977.

Defendant failed to return to the Clemmers all sums paid by them, and did not cancel all deeds of trust obtained by defendant. Plaintiffs filed this action on July 8, 1977. The defendant answered denying liability and alleging that the statute of limitations barred the claims.

### Statute of Limitations

The loan was made on October 9, 1973. At that time there was no statute of limitations on actions to rescind loans because of violations of the Truth-in-Lending Act. *See Littlefield v. Flanagan*, 498 F.2d 1133 (10th Cir. 1974).

Effective October 28, 1974, Congress enacted 15 U.S.C. § 1635(f), a three-year statute of limitation on suits to rescind. That statute reads as follows:

"(f) An obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs earlier, notwithstanding the fact that the disclosures required under this section or any other material disclosures required under this part have not been delivered to the obligor."

On May 13, 1977, the plaintiffs wrote their rescission letter. It was received on May 17, 1977.

This suit to rescind was filed July 8, 1977.

The suit to rescind was thus filed *more* than three years after the *sale*, but *less* than three years after the effective date of the statute.

The question is whether § 1635(f) is to be applied retroactively, in which case plaintiffs' action would be barred, or prospectively from its effective date, in which case plaintiffs' action is not barred.

The court is aware of only two cases which have decided this question. In *Jamerson v. Miles*, 421 F.Supp. 107, 111 (N.D. Tex.1976), the court concluded that Congress, by enacting § 1635(f), "actually limited to three years the existence of the right [of rescission]." In *James v. Home Construction Company of Mobile*, 458 F.Supp. 54 (S.D.Ala.1977), Judge Hand held that

§ 1635(f) applied prospectively and that the period of limitation did not begin to run until its effective date, October 28, 1974.

■ This court agrees with Judge Hand that Congress did not intend to foreclose the right to rescind of those already owning such a right when § 1635(f) was enacted. Therefore, plaintiffs' action is not barred by the three-year limitation period of § 1635(f).

### Alleged Violations of the Truth-in-Lending Act

The plaintiffs allege that during the course of the loan transaction, defendant violated the Act as follows:

1. By failing to include in the finance charge those amounts charged for credit life insurance, in violation of 15 U.S.C. § 1605(b), and Regulation Z, 12 C.F.R. § 226.4(a)(5).

2. By failing to make the disclosures required by 15 U.S.C. § 1639(a) and by Regulation Z, 12 C.F.R. § 226.8(b) and (d), clearly and conspicuously in a meaningful sequence, in violation of 15 U.S.C. § 1631(a), and Regulation Z, 12 C.F.R. § 226.6(a).

3. By failing to separate inconsistent disclosures required under state law from federal disclosures, or alternatively, by placing, utilizing, and stating additional information so as to confuse or mislead the consumer or to contradict, obscure or detract attention from the information required to be disclosed by Regulation Z, in violation of 15 U.S.C. §§ 1631 and 1632, and Regulation Z, 12 C.F.R. § 226.6(b) and (c). ·

4. By failing properly to disclose a description of any security interest held or to be retained or acquired by the creditor in connection with the extension of credit, and a clear identification of the property to which the security interest relates, in violation of 15 U.S.C. § 1639(a)(8), and Regulation Z, 12 C.F.R. § 226.8(b)(5).

The four claims will be discussed in order.

■ 1. *Failure to include credit life insurance charges in the finance charge.*—In this case credit was extended to four persons, Mr. and Mrs. Clemmer and Mr. and Mrs. Watson. Section 1605(b) provides as follows:

"(b) Charges or premiums for credit life, accident, or health insurance written in connection with any consumer credit transaction shall be included in the finance charge unless

"(1) the coverage of the debtor by the insurance is not a factor in the approval by the creditor of the extension of credit, and this fact is clearly disclosed in writing to the person applying for or obtaining the extension of credit; and

"(2) in order to obtain the insurance in connection with the extension of credit, the person to whom the credit is extended must give specific affirmative written indication of his desire to do so after written disclosure to him of the cost thereof."

Only one authorization was obtained in this transaction, that of Mr. Clemmer. The Act requires specific authorization from parties to whom credit was extended. Since this was not accomplished in this case, defendant could not lawfully exclude these amounts from the finance charge. Defendant violated the Act by not obtaining authorizations for credit life insurance from the other persons to whom credit was extended. *See Rivers v. Southern Discount Company Atlanta II,* CCH Consumer Credit Guide ¶ 98,796 (N.D.Ga.1973).

2. *Failure to make disclosures clearly and conspicuously in a meaningful sequence.*—At the hearing on December 11, 1978, plaintiffs elected not to pursue this claim; it will be deemed waived.

3. *Failure to separate inconsistent state disclosures from federal disclosures.*—The loan in question is regulated both by state and federal law. North Carolina General Statutes, Chapter 24, Article 2, on security instruments covering loans secured by secondary mortgages, requires certain truth-in-lending disclosures concurrent with the disclosures required under federal law. It requires other disclosures which are inconsistent (as defined in Regulation Z, 12 C.F.R. § 226.6(b)(i)) with federally required

disclosures in arrangement and "[in] form, content, terminology, or time of delivery."

N.C.G.S. § 24–16 requires "a complete and itemized closing statement which shall show all disbursements of the loan proceeds and which shall total the principal amount of the loan . . ." This "principal amount," as defined in N.C.G.S. § 24–13, is the aggregate of the amount or value actually received at the time of the loan, plus a stated rate of charge, plus the sum of all existing indebtedness of the borrower paid on his behalf by the lender. This state law "rate of charge," which is included in the "principal amount," includes all charges for application fees, title searches, credit reports, etc. N.C.G.S. § 24–14(b).

The "principal amount" under state law is inconsistent with its counterpart under federal law, the "amount financed." It includes the "rate of charge," N.C.G.S. § 24–13, which is in contrast to the federal law, where the rate of charge is a part of the finance charge, not a part of the amount financed. This principal amount under state law includes *some* items which would be included in the federal law amount financed, but also includes some other items which would be included in the federal law finance charge. Regulation Z, 12 C.F.R. § 226.4.

The state law requires disclosures such as the defendant has made in Part II of the disclosure statement (attached as Exhibit "A"), and those disclosures are different from the requirements of Regulation Z with respect to both content and terminology. *Mason v. General Finance Corp. of Virginia*, 542 F.2d 1226 (4th Cir. 1976).

Regulation Z, 12 C.F.R. § 226.6(c), allows such inconsistent disclosures to be made on the same statement as the truth-in-lending disclosures provided

"(i) All disclosures required . . . appear separately and above any other disclosures,

"(ii) Disclosures required . . . are identified by a clear and conspicuous heading indicating that they are made in compliance with Federal law, and

"(iii) All inconsistent disclosures appear separately and below a conspicuous demarcation line, and are identified by a clear and conspicuous heading indicating that the statements made thereafter are inconsistent with the disclosure requirements of the Federal Truth in Lending Act."

Regulation Z, 12 C.F.R. § 226.6(c)(2).

Here the federal disclosures are clearly and conspicuously identified. Nevertheless, not all the truth-in-lending disclosures—such as security identification, default charge disclosures and rebate disclosures—appear above the state disclosures. The state disclosures are not identified as inconsistent with the truth-in-lending disclosures. The defendant has violated Regulation Z, 12 C.F.R. § 226.6(c).

4. *Failing to make clear identification of property listed as security.*—The plaintiff alleges that the failure to identify on the disclosure statement the Watsons' property, in which a deed of trust was acquired, was a violation of Regulation Z, 12 C.F.R. § 226.8(b)(5).

The disclosure statement identifies the property as "See Exhibit 'B', too long for inclosure here." Exhibit "B" was a copy of the deed of trust on the Watsons' property.

Regulation Z, 12 C.F.R. § 226.8(b)(5), allows reference to a deed of trust where the security cannot be identified on the disclosure statement because of the length of the identification. Whether or not a description can fit within the spaces allowed on the disclosure statement is a matter of judgment in each individual loan. The lender did not violate the law in this case by referring to another document for the description of the property to which the security interest attached.

*Plaintiff's Recovery Where Valid Recission Has Occurred*

The rescission provisions of the Act is 15 U.S.C. § 1635(b), which provides as follows:

"(b) When an obligor exercises his right to rescind under subsection (a) of this section, he is not liable for any fi-

nance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such a rescission. Within ten days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value. Tender shall be made at the location of the property or at the residence of the obligor, at the option of the obligor. If the creditor does not take possession of the property within ten days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it."

■■ The plaintiffs executed and delivered a rescission letter. The defendant did not terminate its security interest within ten days as required by § 1635(b). After receipt of the rescission letter, and while this case was pending, the defendant began foreclosure proceedings on part of the security, and apparently has received complete payment of the obligation. Effective rescission under the Truth-in-Lending Act requires the borrower to make restitution of the amounts expended by the lender.

*Powers v. Sims & Levin*, 542 F.2d 1216 (4th Cir. 1976). Therefore the amount defendant is required to return to the plaintiffs is the sum of all moneys received by the defendant in excess of those sums disbursed to the plaintiffs, or to other persons for the plaintiffs' benefit, on account of this loan transaction. The defendant should also take all steps necessary to void the security interests obtained on the property of the Clemmers and the Watsons.

### Attorneys' Fees

■ The plaintiffs have requested reasonable attorneys' fees in this case. This is a proper request. *Burley v. Bastrop Loan Co., Inc.*, 407 F.Supp. 773, 779 (W.D.La. 1976) (court allowed attorneys' fees, interpreting the Congressional authorization in 15 U.S.C. § 1640(a)(3) *in pari materia* with 15 U.S.C. § 1635). *See Powers v. Sims & Levin*, 542 F.2d 1216, 1222 (4th Cir. 1976).

IT IS THEREFORE ORDERED:

1. That the defendant make an accounting and return to the plaintiffs all sums received by the defendant in excess of those sums disbursed to the plaintiffs or to other persons for the plaintiffs' benefit as a part of this loan transaction.

2. That the defendant take all steps necessary to void or cancel the security interests obtained on the property of the Clemmers and the Watsons.

3. That counsel for plaintiffs file affidavits for attorneys' fees with attention to the considerations set forth by the Fourth Circuit in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216 (4th Cir. 1978).

## EXHIBIT "A"

COMBINED STATEMENT, NOTE, SECURITY AGREEMENT, DISBURSEMENT
SCHEDULE AND ELECTION AS TO INSURANCE PERTAINING TO A LOAN

Account No. _____ 0008

Liberty Financial Planning, Inc.
1417 Central Avenue
Charlotte, N.C.        28205

To BORROWERS (whether one or more)
(Name) George M. Clemmer
(Name) Patricia Clemmer
(Address) 7028 Ludwig Drive, Charlotte, N.C.

PART I DISCLOSURES IN ACCORDANCE WITH FEDERAL LAW

| LOAN CONTRACT DATE | (A) AMT FINANCED (Funds Provided) | (C) FINANCE CHARGE (1) Interest $3036.56 (2) Rate of Charge $300.00 Total $3336.56 | (D) ANNUAL PERCENTAGE RATE 12.82 % | (E) COST OF CREDIT LIFE INSURANCE (Decreasing Term) $456.00 | (F) COST OF PROPERTY INSURANCE ON 1. Real Estate Improvements $ Household Goods $ Motor Vehicle(s) $ Total $noone |
|---|---|---|---|---|---|
| 10/9  73 | $7607.44 | | | | |

TOTAL OF PAYMENTS (B plus C) $10,944.00

In PAYMENT SCHEDULE 72 consecutive monthly installments of which the first shall be $152.00 due on the 10th day of November 19 73 and the others $152.00 each due on the like numbered days of succeeding months.

THIS LOAN IS ONE REGULATED BY THE PROVISIONS OF CHAPTER 24 ARTICLE 2 OF THE GENERAL STATUTES OF NORTH CAROLINA ENTITLED LOANS SECURED BY SECONDARY OR JUNIOR MORTGAGES

Signature of Borrower to be Insured: George M. Clemmer    Date 10-9 1973

| PART II CLOSING STATEMENT | Column A | Column B |
|---|---|---|
| 1 Amount Financed | | $7607.44 |
| 2 Rate of Charge | | $300.00 |
| 3 Amount of Note | | $7907.44 |
| 4 Cost of Credit Life Insurance | $456.00 | |
| 5 Property Insurance Premium | | $456.00 |
| 6 | | $7451.44 |
| 7 Principal Amount | | $300.00 |
| 8 Rate of Charge | | |
| 9 Purchase by None | | -0- |
| 11 Payments to Others on Behalf of Borrowers: | | |
| (a) NCNB | $3313.06 | |
| (b) Household Fin | $1904.91 | |
| (c) Sear | $175.73 | |
| (d) NCNB  BAC | $420.17 | |
| | $1337.57 | |
| 12 | | $7451.44 |
| 13 | | -0- |

Motor Vehicles described below:
Toyota 72  #TE27046866
Toyota 72  #TE21609928

X All household furnishings and appliances on the Borrowers premises at their address above stated

See attached exhibit B too long for enclosure here

## PART III PROMISSORY NOTE AND SECURITY AGREEMENT

BORROWERS ACKNOWLEDGE (1) THAT THEY READ THIS INSTRUMENT, COMPLETE EXCEPT FOR SIGNATURES, BEFORE SIGNING IT, AND (2) THAT THEY HAVE RECEIVED AN EXACT COPY HEREOF.

Patricia Clemmer (Seal)    George M. Clemmer (Signature of Borrower)

Witness: James L. Roberts

278

IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

ROSCOE JAMES, etc.,

    Plaintiff,

vs.           CIVIL ACTION NO. 77-324-H

HOME CONSTRUCTION COMPANY
OF MOBILE, INC.,

    Defendant.

### ORDER

On June 20, 1977 defendant filed with this Court a motion to dismiss the above-styled claim, alleging as grounds that this Court had no jurisdiction over the subject matter of this action due to the fact that it was not timely filed. This motion was based on Title 15, U.S.C.A., § 1635(f), which provides that an obligor's right of rescission shall expire three years after the date of consummation of the transaction upon which a Truth-In-Lending Act claim rests. There is no question in this case but that the right to rescind relied upon by plaintiff was over three years old at the time this action was filed, but plaintiff alleges that October 28, 1974, the date of the amendment to Title 15, U.S.C.A., § 1635(f), should be the date from which the limitation on the right to rescind is measured, rather than June 11, 1973, the date on which the contract in this case was actually signed.

This Court is of the opinion that Congress, in enacting Title 15, U.S.C.A., § 1635(f), did not intend to foreclose the right to rescind to those already owning such right. It is therefore the opinion of this Court that, under Title 15, U.S.C.A., § 1635(f), plaintiff had a right to rescind this contract at any time prior to October 28, 1977. Therefore, plaintiff's claim for rescission is properly before this Court and defendant's motion to dismiss is due to be and the same is hereby DENIED.

DONE this 21st day of June, 1977.

    s) W. B. Hand
        UNITED   STATES   DISTRICT
        JUDGE