621 F.2d 727
 Roscoe JAMES, Individually and as Administrator of the
Estate of Rebecca G. James and on behalf of all
persons similarly situated, Plaintiffs-Appellants,
v.
HOME CONSTRUCTION COMPANY OF MOBILE, INC., et al.,
Defendants-Appellees.
 No. 78-3099.
 United States Court of Appeals,
Fifth Circuit.
 July 15, 1980.
 
 H. Diana Hicks, New Orleans, La., Henry H. Caddell, Legal Services Corp. of Alabama, Montgomery, Ala., Richard J. Ebbinghouse, Legal Services Corp., Selma, Ala., Arthur J. Madden, III, Mobile, Ala., for plaintiffs-appellants.
 Richard L. Thiry, Mobile, Ala., for defendants-appellees.
 Appeal from the United States District Court for the Southern District of Alabama.
 Before TUTTLE, RANDALL and TATE, Circuit Judges.
 TUTTLE, Circuit Judge:
 
 
 1
 This is an appeal from a granting of the defendant's motion to dismiss in a Truth-in-Lending Act class action. The district court based its dismissal on two grounds that a class action was inappropriate for 15 U.S.C. § 1635 actions and that a successor obligor could not bring a Truth-in-Lending action. We reverse the judgment of the trial court as to the successorship theory but hold that the plaintiff cannot bring this action as a class action.
 
 
 2
 Rebecca James, the mother of the plaintiff here, contracted with the defendant in 1973 to have repairs and improvements done on her home. According to the trial court, although Mrs. James was told by an agent of the defendants at that time that the cost would be $5,322.00, she received a statement in August 1973, reflecting that she owed $7,509.60 on the deferred payment price. In accordance with the credit extension, Mrs. James made 36 monthly payments of $125.16 before her death in July, 1976. The plaintiff, her son and administrator of the estate, made several more payments after her death. However in May 1977, Mr. James through his attorney, gave notice to the defendants of recission and cancellation of the contract and demanded payment of all sums due to him under federal and state statutes.
 
 
 3
 Mr. James then initiated this suit, seeking relief under 15 U.S.C. § 1635(a),[1] and sought class certification. The defendant, Home Construction Company, Inc. (Home), first moved to dismiss the suit on the grounds that the three-year statute of limitations barred the suit. The district court denied this motion. Home then moved to dismiss the suit on the grounds that a survivor could not bring a recission action and that a class action was improper for § 1635 suits. The district court granted this motion and dismissed the suit. This appeal ensued.
 
 
 4
 The defendant argues first again that the three-year statute of limitations bars this suit. Section 1635(f), the section in question, was passed subsequent to when this cause of action arose. The appellee urges that the applicable limitation period began to run when the action arose (June 11, 1973), not when this section was passed (October 22, 1974), and therefore the suit is barred.
 
 
 5
 Like the district court, we reject the appellee's contention for several reasons. While we note that several district courts have ruled in similar cases that the limitations period begins to run on the day the contract was signed, we think those cases were wrongly decided. See Jamerson v. Miles, 421 F.Supp. 107 (N.D.Tex.1976); Rodriguez v. County Lumber and Supply Co., 460 F.Supp. 810 (W.D.Ill.1978).
 
 
 6
 We reach this decision for several reasons. In Jamerson v. Miles, the district court reasoned that 15 U.S.C. § 1635(f) was not a true statute of limitations, but rather was a statute which limited a substantive statutorily created right to rescind and therefore could not be applied prospectively. In Jamerson, the court relied heavily on the fact that Section 1635 created and then limited rights which did not exist at common law.
 
 
 7
 We see no reason to continue to abide by obsolete judicial dicta which have little relevance to contemporary thought.[2] The fact that § 1635 is a statutorily created right and not a common law one should make little difference in a consideration of whether or not this cause of action survives. Rather, the key inquiry in a situation like this one centers on what was the Congressional intent in passing § 1635(f). We think it clear that Congress meant to have the statute applied prospectively. First, the Truth-in-Lending Act, a remedial act, has usually been given a broad liberal interpretation since it is assumed that was the intent of Congress. Littlefield v. Walt Flanagan & Co., 498 F.2d 1133 (10th Cir. 1974). Second, the Conference Committee report on the Truth-in-Lending Act amendments of which § 1635(f) were a part, described these amendments as "a series of basically technical amendments designed to improve the administration of the Truth in Lending Act." H.R.Conf.Rep.No.93-1429, 93d Cong., 2d Sess. (1974), U.S.Code Cong. & Admin.News 1974, pp. 6119, 6152. This language strongly suggests that Congress did not intend to limit with these amendments those substantive rights that already existed under the Act. For these reasons, we hold that given our interpretation of the Congressional intent in passing § 1635(f), it should be applied prospectively. See also Clemmer v. Liberty Fin. Planning, Inc., 467 F.Supp. 272 (W.D.N.C.1979).
 
 
 8
 However, we reverse the district court's judgment dismissing the suit on the grounds that the right to rescind cannot pass to a survivor. In reversing that judgment, we find ourselves in agreement with the reasoning in the recent decision of the Seventh Circuit Court of Appeals in Smith v. No. 2 Galesburg Crown Finance Corp., 615 F.2d 407 (7th Cir. 1980) which found that a cause of action under § 1640 of the Act survives in favor of the administrator of the estate of a deceased plaintiff.
 
 
 9
 The first question to be decided in a consideration of this issue is whether the survival question is a matter of federal or state law. See Wright, the Law of Federal Courts, 278-286 (1976). As noted in Smith, the question of survival of a federal cause of action has usually been described as a question of federal common law, in the absence of an expression of contrary intent. Smith at 413; Bowles v. Farmers National Bank of Lebanon, Ky., 147 F.2d 425 (6th Cir. 1945); Heikkila v. Barber, 308 F.2d 558 (9th Cir. 1962). Cf. 7A Wright and Miller, Federal Practice and Procedure, § 1952 at 642 (1972). We do not find such an expression of contrary intent here. We therefore hold that this issue is to be decided according to federal common law.
 
 
 10
 Looking at that common law, we find that very few courts have considered the question of survivability under any sections of the Truth-in-Lending Act. The only Circuit Court to consider any portion of the statute was the Seventh Circuit in Smith.[3] We find that a Truth-in-Lending Act action under § 1635 survives the death of the plaintiff.[4] Traditionally, the rule has been that actions for penalties do not survive the death of the plaintiff. Schreiber v. Sharpless, 110 U.S. 76, 3 S.Ct. 423, 28 L.Ed. 65 (1884). Therefore we must determine whether the remedy that is part of the action under the Truth-in-Lending Act is a penal sanction. In Murphy v. Household Finance Corp., 560 F.2d 206 (6th Cir. 1977), the Sixth Circuit Court of Appeals focused on three factors in its analysis of whether a particular statutory provision was penal. It looked at:
 
 
 11
 (a) whether the purpose of the action was to redress individual wrongs or wrongs to the public;
 
 
 12
 (b) whether the recovery ran to the individual or public;
 
 
 13
 (c) whether the recovery was disproportionate to the harm suffered.[5]
 
 
 14
 Id. at 209.
 
 
 15
 A consideration of the first factor the purpose of the action involves a basic analysis of the purposes of the entire Truth-in-Lending Act. It is true that in some senses the purpose of the Act and of this action is to redress both individual wrongs and wrongs to the public, in the sense of redressing a broad social problem. However the first section of the Act states:
 
 
 16
 § 1601. Congressional findings and declaration of purpose
 
 
 17
 The Congress finds that economic stabilization would be enhanced and the competition among the various financial institutions and other firms engaged in the extension of consumer credit would be strengthened by the informed use of credit. The informed use of credit results from an awareness of the cost thereof by consumers. It is the purpose of this subchapter to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit.
 
 
 18
 In this statement of purpose, Congress indicated that the primary purpose of the Act is to enable the individual consumer to be able to credit shop and avoid the uninformed use of credit. As the Seventh Circuit Court of Appeals noted in Smith, what is mandated are not conditions of credit, but only disclosures, leaving it up to each consumer to select his own credit. Smith at 414. As to the first factor discussed in Murphy, we find that the primary purpose of this action is to redress individual wrongs.
 
 
 19
 The second factor whether the recovery runs to the individual or the public is obviously closely related to the first. Section 1635's recission remedy is an individual remedy, not a broad one. As to this factor, we find that the recovery runs to the individual.
 
 
 20
 The third factor the relationship of the recovery to the harm also provides support for the proposition that § 1635 is not a penal provision. As noted by this Court in Sosa v. Fite, 498 F.2d 114, 119 (5th Cir., 1974), the purpose of the recission remedy is to restore the parties, as much as possible, to the status quo ante. See also Mitchell v. Security Inv. Corp. of Palm Beaches, 464 F.Supp. 650, 653 (S.D.Fla.1979).
 
 
 21
 We also find support for our conclusion that this section of the Act is not penal in the tendency of courts that have interpreted the Truth-in-Lending Act to emphasize the remedial character of the Act. Gerasta v. Hibernia National Bank, 575 F.2d 580 (5th Cir. 1977). Such a holding is also consistent with the general policy of the Act as described in § 1601, "to assure a meaningful disclosure of credit terms." The fact that the original obligor has died should not mean that a remedy for improper disclosure should be found to be no longer applicable.
 
 
 22
 As the last part of its opinion in this case below, the district court found that class actions were not warranted by the language of Section 1635. The court concluded that the recission remedy was a "purely personal remedy" and that an obligor could not start a class action, merely by filing an individual claim.
 
 
 23
 We agree with this portion of the lower court's decision. The language of Section 1635(b),[6] it seems clear, gives the creditor ten days in each case in which to go through the steps of recission before the matter can be brought to court. This is a right which the creditor has with each individual obligor. Cf. Nelson v. United Credit Plan, Inc., 77 F.R.D. 54 (E.D.La.1978). Thus the notion of a class action in this sort of context would contradict what would seem to be the Congressional intent about the nature of this action.[7] Cf. Lunsford v. United States, 418 F.Supp. 1045 (D.S.D.1976), aff'd 570 F.2d 221 (8th Cir. 1977).
 
 
 24
 We therefore remand this case for proceedings not inconsistent with this opinion.
 
 
 
 [1]
 Section 1635(a) states:
 Except as otherwise provided in this section, in the case of any consumer credit transaction in which a security interest, including any such interest arising by operation of law, is or will be retained or acquired in any real property which is used or is expected to be used as the residence of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following the consummation of the transaction or the delivery of the disclosures required under this section and all other material disclosures required under this part, whichever is later, by notifying the creditor, in accordance with regulations of the Board, of his intention to do so. The creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section. The creditor shall also provide, in accordance with regulations of the Board, an adequate opportunity to the obligor to exercise his right to rescind any transaction subject to this section.
 
 
 [2]
 It should be noted that Justice Holmes once said that it was revolting to have no better reason for a rule than that it was promulgated in the reign of Henry IV. See The Path of the Law, in Collected Legal Papers 167, 187 (1920)
 
 
 [3]
 See Roy Emerson Maney v. Anderson Chevrolet-Olds, Inc., et al., Civ. Action No. B-C-78-263 (W.D.N.C.1979) (action survives death of plaintiff); Johnson v. Household Finance Corp., 453 F.Supp. 1327 (S.D.Ill.1978) (action does not survive death of obligor but analysis based on Illinois law); James v. Home Construction Co., Inc., 458 F.Supp. 54 (S.D.Ala.1975) (action does not survive death of obligor). Cf. Murphy v. Household Finance Corp., 560 F.2d 206 (6th Cir. 1977); Porter v. Household Finance Corp. of Columbus, 385 F.Supp. 336 (S.D.Ohio 1974)
 
 
 [4]
 We do not decide here the question that the Seventh Circuit decided in Smith : whether a cause of action under § 1640 of the Act survives
 
 
 [5]
 Murphy relied heavily on the principal Supreme Court case to discuss penal statutes, Huntington v. Attrill, 146 U.S. 657, 13 S.Ct. 224, 36 L.Ed.2d 1123 (1892)
 
 
 [6]
 Section 1635(b) states:
 When an obligor exercises his right to rescind under subsection (a) of this section, he is not liable for any finance or other charge, and any security interest given by the obligor, including any such interest arising by operation of law, becomes void upon such a rescission. Within ten days after receipt of a notice of rescission, the creditor shall return to the obligor any money or property given as earnest money, downpayment, or otherwise, and shall take any action necessary or appropriate to reflect the termination of any security interest created under the transaction. If the creditor has delivered any property to the obligor, the obligor may retain possession of it. Upon the performance of the creditor's obligations under this section, the obligor shall tender the property to the creditor, except that if return of the property in kind would be impracticable or inequitable, the obligor shall tender its reasonable value. Tender shall be made at the location of the property or at the residence of the obligor, at the option of the obligor. If the creditor does not take possession of the property within ten days after tender by the obligor, ownership of the property vests in the obligor without obligation on his part to pay for it.
 
 
 [7]
 In Boggs v. Alto Trailer Sales, Inc., 511 F.2d 114 (5th Cir. 1975), this Court cast serious doubt on the possibility of a class action in Truth-in-Lending Act recission cases. In that case, the Court emphasized the conflict among parties seeking recission from a credit institution of limited solvency. Id. at 118. In Nelson v. United Credit Plan, Inc., 77 F.R.D. 54 (E.D.La.1978), that Court also pointed out that "the availability of an award of attorneys' fees to a successful plaintiff who seeks his recission on an individual rather than a class basis undermines the contention that class treatment furthers the class members' interest . . . by allowing them to share the cost of a single attorney . . . ." Id. at 58