Roland E. DAVIS

v.

**EDGEMERE FINANCE COMPANY.**

Civ. No. K–81–5.

United States District Court,
D. Maryland.

Sept. 30, 1981.

**1122**

Otto Major, Aberdeen, Md., for plaintiff.

Virginia Deardorff and Herbert H. Miller, Towson, Md., for defendant.

FRANK A. KAUFMAN, Chief Judge.

In this case, instituted on January 2, 1981, plaintiff alleges violations by defendant of the Truth in Lending Act, 15 U.S.C. § 1601 to 1681t (TILA). Subject matter jurisdiction is present pursuant to § 130(e) of the TILA, 15 U.S.C. § 1640(e), and 28 U.S.C. § 1337. Defendant has moved to dismiss on the ground that the action is barred by the one-year limitations period established by TILA § 1640(e).

The following allegations are contained in the complaint filed by plaintiff:

(1) Plaintiff resides in Maryland. Defendant is a Maryland corporation licensed to lend money under the relevant Maryland statutes. Defendant, in the ordinary course of its business, offers to extend and extends consumer credit, repayable in more than four installments, upon which a finance charge is imposed.

(2) On or about October 19, 1976, plaintiff executed a note payable to defendant in the amount of $6,625.06 with a designated finance charge of $2,217.14. The loan was to be payable in 60 installments of $147.37 each. The simple interest rate was 12% per annum, plus fees in the amount of $100. The transaction included a security interest in a mobile home, seemingly owned by plaintiff. The consumer loan was subject to the TILA and Regulation Z promulgated thereunder, 12 C.F.R. Pt. 226.

(3) Defendant, with intent to deceive and defraud plaintiff, consummated the loan to plaintiff in violation of the TILA, the Maryland Consumer Loan Law, Md.Com.Law Code Ann. §§ 12–301 to –317, or the Maryland Consumer Protection Act, *id.* §§ 13–101 to –411, because, *inter alia,* (a) the Maryland Consumer Loan Law limits loans thereunder to an amount or value not exceeding $3,500, Md.Com.Law Code Ann. § 12–303(a); (b) defendant split the loan into two payment books, one in the amount of $4,496.49 with monthly payments of $49.98 and the other in the amount of $6,625.06 with monthly payments of $147.37; (c) defendant required plaintiff to make payments on each book and assessed late payment charges on each book; and (d) defendant deprived plaintiff of information required to be disclosed by the TILA and needed in order for plaintiff to compare the terms of the loan with other more favorable terms available from other lenders.

Plaintiff further asserts in his complaint that plaintiff relied upon defendant's representations and was induced to borrow funds in excess of the limit, to pay excessive late charges, and to forgo dealing with another lender and that the one-year statute of limitations in TILA § 1640(e) "does not apply." Plaintiff seeks the award under the TILA of $1,000, i. e., of statutory damages, and of attorney's fees and, for violations of the Maryland statutes, also seeks a decree that the loan is void, the entry of a judgment for all amounts which plaintiff has already paid to defendant in connection with the loan, and punitive damages in the amount of $25,000.

*The TILA Limitations Period*

15 U.S.C. § 1640(a) provides that a creditor who fails to comply with the requirements of the TILA with respect to any person will be liable to such person for twice the finance charge imposed in connection with the transaction, but not less than $100 nor more than $1,000, plus "the costs

of the action" and "reasonable" attorney's fees. Section 1640(e) states:

> Any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation.

■ Defendant contends that the within action, instituted in 1981, long after one year from the date the loan was consummated in October 1976, is time barred by § 1640(e). That provision's one-year limitations period begins to run from the date the loan agreement is entered into. "The Act does not define 'occurrence' of the violation, but TILA requires that disclosures be made 'before the credit is extended.' See 15 U.S.C. § 1639(b)." *Rudisell v. Fifth Third Bank,* 622 F.2d 243, 246 (6th Cir. 1980). Judge Kennedy, in *Rudisell,* relied upon the Sixth Circuit's prior opinion in *Wachtel v. West,* 476 F.2d 1062 (6th Cir.), *cert. denied,* 414 U.S. 874, 94 S.Ct. 161, 38 L.Ed.2d 114 (1973), and upon *Wachtel's* reliance upon § 1639(b) and Regulation Z, 12 C.F.R. Pt. 226, promulgated by the Federal Reserve Board pursuant to 15 U.S.C. § 1604. The fact that the violation continues after the credit is extended does not toll or otherwise extend the limitations period.[1]

A different case may be presented when the contract does not call for an immediate extension of credit. In such a case, limitations may not commence to run until the credit is actually extended under the contract—i. e., when performance of the contract commences. *See, e. g., Postow v. OBA Federal Savings & Loan Ass'n,* 627 F.2d 1370, 1379–80 (D.C.Cir.1980); *Stevens v. Rock Springs National Bank,* 497 F.2d 307, 310 (10th Cir. 1974); *Partida v. Warren Buick Inc.,* 454 F.Supp. 1366 (N.D.Ill.1978). Herein, however, the record discloses that the credit was extended at the time the contract was entered into, or, in any event, shortly thereafter at the very latest, and much more than one year before the institution of the within action.

Nor does this case present an issue in the factual context with which Judge Swygert dealt in *Goldman v. First National Bank of Chicago,* 532 F.2d 10 (7th Cir.), *cert. denied,* 429 U.S. 870, 97 S.Ct. 183, 50 L.Ed.2d 150 (1976), i. e., an *open ended* credit card agreement. In *Goldman* the Seventh Circuit held that the period did not begin to run until the first finance charge was imposed. *Id.* at 21. In contrast to *Goldman,* this case involves a closed end transaction—a one-shot consumer loan—in which the finance charges appear to have been included in the original payment schedule and in which late charges were assessed in connection with both payment books involved herein well in advance of one year before the within suit was filed.

Plaintiff seeks to avoid the limitations bar of § 1640(e) on the grounds that defendant fraudulently concealed its wrongdoing and that that fraudulent concealment operates to toll the running of the limitations period. That question does need to be reached herein. But before it can be addressed, it is necessary for this Court to determine whether § 1640(e)'s limitation of time for suit establishes a jurisdictional prerequisite. If it does so, then equitable restraints, such as estoppel or the fraudulent concealment tolling doctrine, upon the application of a pure limitations provision, are of no aid to a person such as plaintiff herein. *Cooper v. Bell,* 628 F.2d 1208, 1212 (9th Cir. 1980) (title VII); *In re Consolidated Pretrial Proceedings in the Airline Cases,* 582 F.2d 1142, 1151 (7th Cir. 1978) (title VII) (Pell, J.), *cert. granted,* 450 U.S. 979, 101 S.Ct. 1511, 67 L.Ed.2d 813 (1981); *Stewart v. United States,* 503 F.Supp. 59, 63 (N.D.Ill.1980) (Federal Tort Claims Act).

*Subject Matter Jurisdiction*

■ Section 1640(e) of the TILA grants jurisdiction in the same sentence in which it

---

1. *See Postow v. OBA Federal Sav. & Loan Ass'n,* 627 F.2d 1370, 1379–80 (D.C.Cir.1980), *aff'g* 390 F.Supp. 1130 (D.D.C.1975); *Bartholomew v. Northampton Nat'l Bank,* 584 F.2d 1288, 1296 (3d Cir. 1978); *Stevens v. Rock Springs Nat'l Bank,* 497 F.2d 307, 309–10 (10th Cir. 1974); *Harvey v. Housing Dev. Corp. & Information Center,* 451 F.Supp. 1198, 1202 (W.D.Mo.1978); *Fenton v. Citizens Sav. Ass'n,* 400 F.Supp. 874, 879–81 (C.D.Mo.1975); *Kristiansen v. John Mullins & Sons, Inc.,* 59 F.R.D. 99, 107 (E.D.N.Y.1973).

establishes the one-year limitations period. Several courts seem to have suggested that it is indeed a jurisdictional provision. *See Rust v. Quality Car Corral, Inc.*, 614 F.2d 1118, 1119 (6th Cir. 1980); *Stevens v. Rock Springs National Bank*, 497 F.2d 307, 309 (10th Cir. 1974); *Jones v. Villa Park Trust & Savings Bank*, No. 79 C 3047, slip op. at n. 1 (N.D.Ill. Feb. 19, 1980); *Fenton v. Citizens Savings Ass'n*, 400 F.Supp. 874, 879 (C.D.Mo.1975); *cf. Jamerson v. Miles*, 421 F.Supp. 107, 110–11 (N.D.Tex.1976) (three-year limitations period for rescission actions under TILA § 1635(a) jurisdictional). In *In re Dickson*, 432 F.Supp. 752, 756 (W.D.N.C. 1977), however, Judge McMillan concluded that the limitations period set forth in § 1640(e) of the TILA was not a "condition precedent" and was tolled by 11 U.S.C. § 29, which provides for the tolling of limitations periods in suits by trustees in bankruptcy.

Herein we deal with § 1640(e). A question similar to the jurisdictional issue posed by that statutory provision has arisen with regard to 15 U.S.C. § 1635, which permits rescission of consumer credit contracts under certain conditions and which originally contained no limitations period. In October 1974 Congress amended the TILA to include a three-year limitations period with relation to the rescission right conferred by § 1635. In *Jamerson v. Miles*, 421 F.Supp. 107, 110–11 (N.D.Tex.1976), the question arose as to whether that amendment affected the right to rescission of contracts already in existence for more than three years when that amendment was enacted or whether that amendment had prospective effect only. Holding that that amendment was jurisdictional in nature, the court held it to be retroactive. In so doing, the court relied upon *Fenton v. Citizens Savings Ass'n*, 400 F.Supp. 874 (C.D.Mo.1975), and noted that the limitation was written into the same statute which created the remedy. To the same effect, *see Rodriguez v. County Lumber & Supply Co.*, 460 F.Supp. 810 (N.D.Ill.1978). But other courts have disagreed, *see, e. g., James v. Home Construction Co. of Mobile*, 621 F.2d 727, 728–29 (5th Cir. 1980) (disapproving both *Jamerson* and *Rodriguez*); *Clemmer v. Liberty Financial Planning Inc.*, 467 F.Supp. 272, 273–74

(W.D.N.C.1979) (McMillan, J.). In *James*, Judge Tuttle wrote (at 729):

We reach this decision for several reasons. In *Jamerson v. Miles*, the district court reasoned that 15 U.S.C. § 1635(f) was not a true statute of limitations, but rather was a statute which limited a substantive statutorily created right to rescind and therefore could not be applied prospectively. In *Jamerson*, the court relied heavily on the fact that Section 1635 created and then limited rights which did not exist at common law.

We see no reason to continue to abide by obsolete judicial dicta which have little relevance to contemporary thought.[2] The fact that § 1635 is a statutorily created right and not a common law one should make little difference in a consideration of whether or not this cause of action survives. Rather, the key inquiry in a situation like this one centers on what was the Congressional intent in passing § 1635(f). We think it clear that Congress meant to have the statute applied prospectively. First, the Truth-in-Lending Act, a remedial act, has usually been given a broad liberal interpretation since it is assumed that was the intent of Congress. *Littlefield v. Walt Flanagan & Co.*, 498 F.2d 1133 (10th Cir. 1974). Second, the Conference Committee report on the Truth-in-Lending Act amendments of which § 1635(f) were a part, described these amendments as "a series of basically technical amendments designed to improve the administration of the Truth in Lending Act." [H.R.Conf.Rep.No.1429, 93d Cong., 2d Sess. (1974), *reprinted in* 1974 U.S.Code Cong. & Ad.News 6148, 6152.] This language strongly suggests that Congress did not intend to limit with these amendments those substantive rights that already existed under the Act. For these reasons, we hold that given our interpretation of the Congressional intent in passing § 1635(f), it should be applied prospectively. *See also Clemmer v. Liberty Fin. Planning, Inc.*, 467 F.Supp. 272 (W.D.N.C.1979).

---

[2] It should be noted that Justice Holmes once said that it was revolting to have no better

reason for a rule than that it was promulgated in the reign of Henry IV. See The Path of the Law, in Collected Legal Papers 167, 187 (1920).

The mere fact that a limitations provision is contained in the same statute which creates the substantive right sued upon does not in and of itself require the conclusion that equitable tolling doctrines are inapplicable. In *Burnett v. New York Central Railroad Co.*, 380 U.S. 424, 426–27 & n. 2, 85 S.Ct. 1050, 1053–54 & n. 2, 13 L.Ed.2d 941 (1965), a case brought under the Federal Employer's Liability Act, and again in *American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 556–59, 94 S.Ct. 756, 767–69, 38 L.Ed.2d 713 (1974), a case brought under the Clayton Act, the Supreme Court, in creating in remedial contexts tolling rules for federal statutes of limitations, rejected arguments that because the limitations provisions were contained in substantive statutes, they were not subject to judicially created tolling rules, stressing that the relevant question is the intent of the Congress in the given instance. *See also Hodgson v. Lodge 851, International Ass'n of Machinists & Aerospace Workers, AFL–CIO*, 454 F.2d 545, 547–48 & nn. 2–3 (7th Cir. 1972) (Pell, J.) (Labor Management Reporting and Disclosure Act).

The legislative history relating to § 1640(e) is sparse. The House Report refers twice to the civil remedies provision, H.R.Rep.No.1040, *reprinted in* 1968 U.S. Code Cong. & Ad.News 1962, 1976 & 1987–88, but there are no references to the limitations language. The Conference Report seemingly does not refer at all to the subject of limitations. Thus, we are left to the language of § 1640(e) itself. The limitations provision set forth therein is indeed in the same sentence as the jurisdictional grant, but it is phrased simply as a one-year time limit upon the bringing of suit with no affirmative indication that the Congress intended to prevent the application of equitable tolling doctrines. With that in mind and in view of the remedial purpose of the statute—i. e., to make each borrower-consumer privy to appropriate information before he contractually commits himself, it would appear more probable than not that

the Congress did not intend to permit lenders to frustrate the purposes of the TILA by fraudulently concealing their violations throughout the one-year limitations period. Accordingly, this Court concludes that, in a proper case, the equitable tolling approach is applicable under § 1640(e). The question remains whether the within case is such a proper case.

### Fraudulent Concealment

The doctrine of fraudulent concealment—namely, the doctrine that a statute of limitations is tolled when the defendant, by fraudulent means, keeps the potential plaintiff in ignorance of the fact that that plaintiff has a right of action—has long been recognized in connection with the application of federal statutes of limitations. *See, e. g., Holmberg v. Armbrecht*, 327 U.S. 392, 396–97, 66 S.Ct. 582, 584–85, 90 L.Ed. 743 (1946); *Bailey v. Glover*, 88 U.S. (21 Wall.) 342, 347–48, 22 L.Ed. 636 (1875); *Stearns v. Page*, 48 U.S. (7 How.) 818, 828–29, 12 L.Ed. 928 (1849). In *Holmberg*, Justice Frankfurter noted that the fraudulent concealment doctrine is "read into every federal statute of limitation." *Holmberg v. Armbrecht*, 327 U.S. at 397, 66 S.Ct. at 585.

What constitutes fraudulent concealment and what a plaintiff must establish in a given case has been made clear by Judge Butzner in *Charlotte Telecasters, Inc. v. Jefferson-Pilot Corp.*, 546 F.2d 570 (4th Cir. 1976), in which, in a case involving the TILA, he wrote (at 574):

In *Weinberger v. Retail Credit Co.*, 498 F.2d 552, 555 (4th Cir. 1974), we emphasized . . . that merely intoning the word "fraudulently" is not sufficient to avoid the statute. We stated that the elements of this counterpoise are "(1) fraudulent concealment by the party raising the statute together with (2) the other party's failure to discover the facts which are the basis of his cause of action despite (3) the exercise of due diligence on his part." Since this means of avoiding the statute was created by courts of equity, we adopted their requirement that the facts necessary to show these elements should

be distinctly pleaded.... In *Stearns v. Page*, 48 U.S. (7 How.) 818, 829, 12 L.Ed. 928 (1849), the Court explained the reasons for these essential elements as follows:

> "A complainant, [to avoid the statute of limitations,] must state in his bill distinctly the particular act of fraud, misrepresentation, or concealment,— must specify how, when, and in what manner, it was perpetrated. The charges must be definite and reasonably certain, capable of proof, and clearly proved.... And especially must there be distinct averments as to the time when the fraud, mistake, concealment, or misrepresentation was discovered, and what the discovery is, so that the court may clearly see, whether, by the exercise of ordinary diligence, the discovery might not have been before made."[2]

In *Lukenas v. Bryce's Mountain Resort, Inc.*, 538 F.2d 594 (4th Cir. 1976), a case brought under the Interstate Land Sales Full Disclosure Act, 15 U.S.C. §§ 1701 to 1720, Judge Russell wrote (at 597):

> The grounds on which a statute of limitations may be tolled are fixed by federal standards, ... and the burden of establishing a factual basis for meeting those standards rests on the plaintiffs .... To make out such tolling, the plaintiff under the federal rule must show not only that he exercised due diligence to discover his cause of action prior to the running of the statute but also that the defendant was guilty of "some affirmative act of fraudulent concealment [which] frustrated discovery notwithstanding such diligence." There will patently be considerable difference in rights, so far as tolling the statute is concerned between a lot purchaser who relies on the bare failure to file a Statement of Record or furnish the purchasers a "Property Report" for a cause of action under § 1709 of the Act and one who plants his rights on a false or fraudulent statement in the "Property

Report" furnished him under the Act, in reliance on which the purchaser acquired the lot. In the first case the facts, which represent merely a plain and obvious violation of the statute, offer little or no opportunity for a successful establishment of the tolling; in the other case, where there is a claim of fraudulent misrepresentation, the ability to establish tolling may be eased somewhat.

(footnote and citations omitted) (quoting *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 461 (2d Cir. 1974)). To put it another way, the statute is tolled only until plaintiff has such notice as would " 'impel a reasonable man in his position to make inquiry.' " *Johns Hopkins University v. Hutton*, 488 F.2d 912, 917 (4th Cir. 1973) (Field, J.) (quoting Friedman, *Delay as a Bar to Rescission*, 26 Cornell L.Q. 426, 432 (1941)), *cert. denied*, 416 U.S. 916, 94 S.Ct. 1622, 40 L.Ed.2d 118 (1974).

Application of the fraudulent concealment doctrine in the context of the disclosure requirements of the TILA requires more than mere nondisclosure, as Judge Russell has indicated in *Lukenas*. Otherwise, in a context in which nondisclosure is the gravamen of the violation, then just about every failure by defendant to disclose as required by the TILA would seemingly bring about tolling and would tend to eviscerate the limitations provision set forth in § 1640(e) to about the same extent as would the application of the continuing violation theory.[3]

In *Chevalier v. Baird Savings Ass'n*, 371 F.Supp. 1282 (E.D.Pa.1974), Chief Judge Lord refused to permit application of the fraudulent concealment doctrine based on mere nondisclosure, but suggested that it might be applicable "where a *fraudulent* intention prevented the requisite disclosure. This would require at the least that defendants have known they were violating the provisions of the Act." *Id.* at 1285 (emphasis in original). Judge Lord concluded that

---

**2.** *See also In re Independent Gasoline Antitrust Litigation*, 79 F.R.D. 552, 558–59 (D.Md.1978) (Blair, J.).

**3.** *See* the discussion at page 3 *supra*.

plaintiffs had not alleged enough to bring them within reach of this rule, but afforded them the opportunity to amend their complaint in an attempt to state such a claim.[4] Judge Lord, in a subsequent opinion in the same case, *Chevalier v. Baird Savings Ass'n*, 66 F.R.D. 105, 107 (E.D.Pa.1975), held that an allegation that the defendants knew or should have known that they were failing to disclose, and that they did so intentionally, was sufficient to state a claim for fraudulent concealment.

Defendants in *Chevalier* also contended that plaintiffs had not acted with due diligence because all of the facts necessary to determine that the disclosure statement was inaccurate were provided to plaintiff at the time the statement was given. Judge Lord rejected that contention, suggesting that mere provision of the information "might not be sufficient to enable a reasonably prudent layman to discover the existence of complicated mathematical deception." *Id.* at 108.[5]

■ In the within case plaintiff appears to complain of at least three separate or interrelated failures by defendant to disclose as required by the TILA: first, that

the loan would be split into two payment books; second, the correct terms under which default or late charges would be imposed; and third, the correct reference to the Maryland Consumer Loan Law, i. e., reference only to a predecessor statute.[6]

Turning to the last item first, it is hard to see that as a sufficient allegation to support a finding of fraudulent concealment. Even assuming that the miscitation of the Maryland statute was a violation of the TILA or applicable regulations, it hardly constitutes concealment—anyone who checked would have discovered that the statute was erroneously referred to and no one who had so checked could fairly claim to have relied upon the miscitation. Next, there is plaintiff's contention relating to the division of the loan into two payment books. Even assuming arguendo that in so doing, defendant, as plaintiff alleges, intentionally violated the TILA, plaintiff nevertheless was aware of the division into two payment books, at the latest, when he made the first payment on the second book. According to the exhibits attached to plaintiff's complaint, the first payment shown in one book (exhibit 2) was made on January 15, 1979,

---

**4.** Federal Rule of Civil Procedure 9(b) requires that "the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind may be averred generally." Those standards, which apply to allegations of fraudulent concealment, *Weinberger v. Retail Credit Co.*, 498 F.2d 552, 555 (4th Cir. 1974), are designed to permit a defendant to be apprised of the claim against him and of the act constituting the alleged fraud. *Felton v. Walston & Co.*, 508 F.2d 577, 581 (2d Cir. 1974) (Lumbard, J.). Accordingly, the circumstances giving rise to the allegations must be specifically pleaded. *Oliver v. Bostetter*, 426 F.Supp. 1082, 1089 (D.Md.1977) (Blair, J.). It is thus well if the time, place and manner of the allegedly fraudulent activities are specified. *Walling v. Beverly Enterprises*, 476 F.2d 393, 397 (9th Cir. 1973) (Choy, J.). Plaintiff in this case has sufficiently met the requirements of those standards by specifying the particular manner in which plaintiff alleges defendant's disclosure was inadequate. The time, place and manner are all sufficiently designated by reference to when the agreement was entered into and the disclosures made or not made. It is true that plaintiff's allegations that defendant's violations were knowing and were intended to deceive

and defraud are made generally, but those are allegations of state of mind, which the rule specifically permits to be made generally. Accordingly, the complaint herein passes muster under Rule 9(b). But that does not mean that they are sufficient to support a claim for fraudulent concealment. Indeed, the opposite is true, for the reasons set forth *infra* at pages 1127–1128 in the body of this opinion.

**5.** In *Bartholomew v. Northampton Nat'l Bank*, 584 F.2d 1288, 1296–97 (3d Cir. 1978), Judge Hunter concluded that the record did not support any contention of fraudulent concealment, distinguishing *Goldman v. First Nat'l Bank of Chicago*, 532 F.2d 10 (7th Cir.), *cert. denied*, 429 U.S. 870, 97 S.Ct. 183, 50 L.Ed.2d 150 (1976), as relating to an open ended credit plan. *See* the discussion at pages 1123–1124 *supra*.

**6.** It may be that the third alleged failure by defendant does not constitute a violation of the TILA. "Regulation Z (promulgated in pursuance of the TILA) requires disclosure of facts. It does not require the lender to write a legal treatise for the borrower." *In re Dickson*, 432 F.Supp. 752, 757 (W.D.N.C.1977) (McMillan, J.).

and the first payment shown in the second book (exhibit 3) was made on November 17, 1976. Those two payments were made nearly two years before the within suit was filed. Thus, plaintiff, even if initially deceived by such concealment, was on notice well over one year before he commenced this action. The same applies to plaintiff's other claim, namely, defendant's alleged failure accurately to set forth the method of computing late charges. In exhibit 2 late charges of $2.50 (denominated L/C) are noted for each payment, beginning with the first payment on January 15, 1979. In exhibit 3 the first late charge noted is on January 10, 1977. There are others which refer to March 7 and April 4, 1977, October 5, 1978, and December 15, 1979. Accordingly, plaintiff had notice that those late charges had been assessed against him, and were recorded in both books, nearly two years before the commencement of this action. In sum, plaintiff's own complaint and the attachments thereto demonstrate a lack of diligence on plaintiff's part.[7] Accordingly, the doctrine of fraudulent concealment is of no aid to plaintiff herein in his futile effort to avoid the limitations bar set forth in § 1640(e).

### The Pendent State Claim

For reasons set forth *supra* defendant is entitled to the grant of its motion to dismiss, which because of the presence of documents in the record in addition to the pleadings, is treated as a motion for summary judgment. *See* Federal Rules of Civil Procedure 12 and 56. Under those circumstances, this Court will exercise its discretion not to retain pendent jurisdiction over plaintiff's state law claim or claims, which will be dismissed, without prejudice to the right of plaintiff timely to refile them in state court if plaintiff is able so to do.

---

7. Plaintiff's counsel, in his memorandum in opposition to defendant's motion to dismiss, states, *inter alia*: "Plaintiff did not become aware of the fraud and deception practiced upon him until he consulted Counsel on or about August of 1980 ...." Court File Doc. 7, at 1. Even assuming that to be so, plaintiff had sufficient information to enable a reasonable person acting with due diligence to have been aware of defendant's alleged failure to disclose as early as January 1979, or about two years before plaintiff filed the within suit.