**Csaba BOKROS, Plaintiff,**

**v.**

**ASSOCIATES FINANCE, INC., Defendant.**

No. 84 C 6126.

United States District Court, N.D. Illinois, E.D.

Dec. 6, 1984.

Andy Norman, Chicago, Ill., for plaintiff.

Andrew B. David, Bob Clark, Jr., Arvey, Hodes, Costello & Burman, Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Csaba Bokros ("Bokros") charges Associates Finance, Inc. ("Associates") with violations of the Truth in Lending Act ("TILA"), 15 U.S.C. §§ 1601–1667e,[1] and various state statutory and common law rules. On Associates' motion, this Court dismissed Bokros' original complaint and this action because the limitations periods applicable under TILA (one for rescission and one for damage actions) had run, thus eliminating the sole basis for federal jurisdiction. Bokros then filed an Amended Complaint (the "Complaint") seeking to meet Associates' objections. Associates in turn renewed its Fed.R.Civ.P. ("Rule") 12(b)(6) motion to dismiss, which this Court granted from the bench October 24, 1984. Bokros now moves for a order vacating the dismissal and reinstating the lawsuit. For the reasons stated in this memorandum opinion and order that motion is denied.

### Facts [2]

On July 11, 1979 Bokros entered into an agreement with Robert Thomas & Associates ("Thomas") to borrow $17,000. Part of the loan proceeds—$8,000—was used to retire a mortgage on Bokros' residence, while more than half—$9,000—was used to help finance the purchase of a tractor-trailer. Bokros' obligation to repay the principal sum plus finance charges, calling for monthly installments over a five-year period, was secured by a junior mortgage on Bokros' house.

Though Bokros received $17,000 in loan proceeds, the note and security agreement memorializing the loan (the "Note,"[3] no copy of which was supplied to Bokros) reflected loan proceeds of $20,000, to which a finance charge of $12,400 was added, for a total repayment obligation of $32,400. While the printed terms of the Note contemplated a loan secured by a security interest, with a space provided for a description of the collateral, no such description was included. Indeed the space allot-

---

**1.** Citations to TILA will take the form "TILA §—," with each section number referring to Title 15 rather than to TILA's internal numbering.

**2.** Bokros' motion to vacate dismissal of his Complaint calls into play the standards applicable to the earlier motion to dismiss: acceptance of the Complaint's well-pleaded factual allegations as true, with all reasonable inferences drawn in Bokros' favor. *Wolfolk v. Rivera*, 729 F.2d 1114, 1116 (7th Cir.1984). That of course involves no actual findings of fact.

**3.** For that purpose Thomas used a preprinted form, with blanks left for specifying such particulars as the principal amount, finance charge and annual percentage rate.

ted for describing collateral other than a motor vehicle simply contained the following handprinted term: "Prepayment penalty of 5% of principal balance will be in effect for 1 yr." Moreover the line provided for specifying the annual percentage rate on the loan was left blank. In two places the Note specified 60 monthly payments of $540 each beginning in August 1979. Bokros also signed and delivered a "business loan" affidavit (Appendix A, the "Affidavit"; see Ill.Rev.Stat. ch. 17, ¶ 6404(c), formerly ch. 74, ¶ 4(c)) attesting (1) he was engaged in the trucking business, doing business as Bokros Trucking, and (2) the loan proceeds were to be used solely to carry on the business (referring specifically to "down payment on tractor-trailer").

In 1981 Bokros and his wife experienced financial difficulties and filed for relief under Chapter 13 of the Bankruptcy Reform Act of 1978, 11 U.S.C. §§ 1301–1330. Before that, however, Thomas had assigned the Note to Associates, which filed with the Cook County Recorder of Deeds a mortgage on Bokros' residence reflecting a principal debt of $20,000 plus finance charges. After the assignment Bokros had been making the monthly payments under the Note to Associates, though after the Chapter 13 filing he made payments to the Chapter 13 trustee, who in turn made payments to Bokros' creditors, including Associates. In all Associates has received payments of at least $29,953.93 on the outstanding obligations.

In 1983 Bokros asked Associates for, and received, a copy of the Note. In light of the discrepancy as to principal amount and other omissions, Bokros decided to invoke TILA. On April 24, 1984 he notified Associates he was rescinding the loan under TILA § 1635. Associates refused to honor the rescission, leading Bokros to initiate this lawsuit July 18, 1984.

### Claimed Bases for Vacating Dismissal

■ Bokros makes a three-part argument in support of his motion:

1. Thomas' loan to him was a consumer credit transaction subject to the provisions of TILA.

2. Associates took the Note subject to any claims and defenses Bokros would have asserted against Thomas.

3. Both TILA limitations provisions were tolled because both Thomas and Associates fraudulently concealed from Bokros his right to rescind the loan.

This opinion will consider each contention in turn.

### 1. Applicability of TILA

TILA § 1603(1) exempts from TILA's provisions:

> Credit transactions involving extensions of credit primarily for business, commercial or agricultural purposes, or to government or governmental agencies or instrumentalities, or to organizations.

To determine whether an extension of credit falls within that exemption, the court "must examine the transaction as a whole and the purpose for which the credit was extended." *Tower v. Moss*, 625 F.2d 1161, 1166 (5th Cir.1980).

■ Bokros argues the loan does not qualify as primarily for business or commercial purposes, because nearly half its proceeds were used to retire Bokros' existing residential mortgage. See *Gallegos v. Stokes*, 593 F.2d 372, 375 (10th Cir.1979) (loan extended for purchase of a pickup truck for both personal and business use was subject to TILA's disclosure requirements).

That contention is of course belied by the representations in the Affidavit, in which Bokros explicitly affirmed the loan proceeds were to be used for business purposes. While the Affidavit is not conclusive on that score, given the necessity to examine the transaction as a whole, it is strong evidence of the loan's character. But even apart from the all-or-none characterization in the Affidavit, on Bokros' own current statement of the facts (Complaint Count I ¶ 3) more than half the proceeds—$9,000 of the $17,000—were in fact used for down payment on a tractor-trailer for

his business (unquestionably a "business" or "commercial" purpose).

After all TILA § 1603 does speak in terms of "primarily." And even though *Gallegos*, 593 F.2d at 375 did talk of "a factual issue to be resolved by the trier of fact," it was referring to a mixed factual bag with permissible inferences going either way. By contrast *Tower*, which said "the nature of the credit transaction is ultimately determined by the entire surrounding factual circumstances" (625 F.2d at 1166 n. 4), considered a set of facts that were not in dispute and resolved the TILA exemption question *as a matter of law* (*id.* at 1166–67). It is worth noting that is precisely how courts deal with the analogous (or, rather, even more factually oriented) question whether the "dominant purpose" of a contract is for sale of goods or for services, governing the applicability vel non of UCC Article 2; see, e.g., *WICO Corp. v. Willis Industries*, 567 F.Supp. 352, 355 (N.D.Ill.1983) and cases cited there.

If "primarily" is to have any substantive content (as it must), in the context of a loan like Bokros'—taken out for two discrete purposes—it must refer to the use of more than half the funds. That use, for purchase of the tractor-trailer, was concededly for "business [or] commercial ... purposes." Because the loan thus involved an "extension[] of credit primarily for business [or] commercial ... purposes," TILA was inapplicable to the loan under TILA § 1603(1) as a matter of law.

This opinion could end right now. But because Bokros must founder on still another ground, it may be worth some further discussion on the assumption the primary purpose of the loan *could* pose a factual question. If so, the principles of *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957), recently reaffirmed in *Hishon v. King & Spalding*, —— U.S. ——, 104 S.Ct. 2229,

2233, 81 L.Ed.2d 59 (1984), would require going forward.

## 2. *Liability of Associates as Assignee*

■ TILA § 1641 defines the scope of an assignee's liability:

(a) Except as otherwise specifically provided in [TILA], any civil action for a violation of [TILA] ... which may be brought against a creditor may be maintained against any assignee of such creditor only if the violation for which such action or proceeding is brought is apparent on the face of the disclosure statement.

However a different rule controls the right to rescission provided by TILA § 1635. On that score TILA § 1641(c) provides:

Any consumer who has the right to rescind a transaction under section 1635 of this title may rescind the transaction as against any assignee of the obligation.

That unequivocal language is confirmed by the legislative history (S.Rep. No. 368, 96th Cong., 1st Sess. 32–33, reprinted in 1980 U.S.Code Cong. & Ad.News 236, 268):

In addition, this section eliminates ambiguity on the question of assignee liability for rescission by stating explicitly that a consumer's exercise of this right is effective against an assignee. Without such protection for the consumer, the right of rescission would provide little or no effective remedy.

Thomas' assignment of the loan, in other words, did not suspend Bokros' rights under TILA § 1635, even as against Associates.[4]

## 3. *Limitations Analysis*

Under TILA § 1635(a), a debtor who has entered into a credit transaction subject to TILA and who, as part of the transaction, has granted the creditor a security interest in his principal dwelling:

shall have the right to rescind the transaction until midnight of the third business day following the consummation of

---

**4.** Associates argues Bokros is really seeking relief under TILA § 1640(a), imposing civil liability for damages (that would render TILA

§ 1641(c) inapplicable). This opinion again makes the assumption most favorable to Bokros by looking to TILA § 1641(c).

the transaction or the delivery of the information and rescission forms required under this section together with a statement containing the material disclosures required under this subchapter, whichever is later, by notifying the creditor, in accordance with regulations of the Board, of his intention to do so. The creditor shall clearly and conspicuously disclose, in accordance with regulations of the Board, to any obligor in a transaction subject to this section the rights of the obligor under this section. The creditor shall also provide, in accordance with regulations of the Board, appropriate forms for the obligor to exercise his right to rescind any transaction subject to this section.

TILA § 1635(f) imposes a time limit on that right to rescind:

An obligor's right of rescission shall expire three years after the date of consummation of the transaction or upon the sale of the property, whichever occurs first, notwithstanding the fact that the information and forms required under this section or any other disclosures required under this part have not been delivered to the obligor....

■■■ Bokros' loan was consummated[5] July 11, 1979—or at least by August 25, 1979, the date of the first installment payment. By the plain terms of the statute, then, Bokros' right to rescind as against Thomas or its assignees had expired long before Bokros gave Associates notice of rescission April 24, 1984.[6]

In an effort to avoid that conclusion, Bokros contends both Thomas and Associ-

ates fraudulently concealed from him his right to rescind under TILA § 1635. His theory is he was deliberately kept in the dark as to his rights by parties who had an affirmative duty to disclose, so that equitable tolling principles suspended the running of the limitations clock for the period the fraudulent concealment continued.

Fraudulent concealment doctrine has long been recognized as applicable to federal statutes of limitations. As Justice Frankfurter put it in *Holmberg v. Armbrecht,* 327 U.S. 392, 397, 66 S.Ct. 582, 585, 90 L.Ed. 743 (1946):

[T]his Court long ago adopted as its own the old chancery rule that where a plaintiff has been injured by fraud and "remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered, though there be no special circumstances or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party." *Bailey v. Glover,* 21 Wall. 342, 348, 22 L.Ed. 636....

That "equitable doctrine is read into every federal statute of limitation," *id.* at 397, 66 S.Ct. at 585, including those under TILA. See *Davis v. Edgemere Finance Co.,* 523 F.Supp. 1121, 1125–27 (D.Md.1981); *Chevalier v. Baird Savings Association,* 66 F.R.D. 105, 106–08 (E.D.Pa.1975).

■■■ To make out a case of fraudulent concealment under TILA, though, Bokros must do more than "merely intoning the word 'fraudulently,'" *Charlotte Telecasters, Inc. v. Jefferson-Pilot Corp.,* 546 F.2d

---

**5.** For TILA purposes a loan is consummated when credit is extended (or perhaps even earlier, when the creditor-customer contractual relationship is created). See *Nash v. First Financial Savings & Loan Ass'n,* 703 F.2d 233, 238 (7th Cir.1983).

**6.** In the notice of rescission to Associates (required by TILA § 1635(a)), Bokros' counsel said:

[T]his transaction has not been consummated....

Just what he meant by that is unclear, but his briefing on the current issue suggests reliance on the notion Bokros had received $17,-

000 in proceeds, while the face amount Thomas wrongfully inserted in the Note was $20,000. But that is really at war with Bokros' fraudulent-concealment theory discussed later in this section of this opinion. Bokros contends the parties' *agreement* was for a principal amount of $17,000, and he acknowledges he received that sum (hence the transaction was "consummated"). If Thomas later altered the Note, that act did not "unconsummate" the loan. Instead it reflects Thomas' fraudulent misrepresentation of the loan's terms when the loan *was* consummated and the Note was executed in blank.

570, 574 (4th Cir.1976) or more than alleging mere nondisclosure, *Davis*, 523 F.Supp. at 1126. Rather he must allege facts indicating (*Davis*, 523 F.Supp. at 1125, quoting *Charlotte Telecasters*, 546 F.2d at 574, in turn quoting *Weinberger v. Retail Credit Corp.*, 498 F.2d 552, 555 (4th Cir.1974)):

> (1) fraudulent concealment by the party raising the statute together with (2) the other party's failure to discover the facts which are the basis of his cause of action despite (3) the exercise of due diligence on his part.

As to Thomas, Bokros has satisfied the *Weinberger-Charlotte-Davis* test. Thomas' alleged modification of the principal amount of the loan on the Note, without giving a copy of the alleged Note to Bokros, concealed from Bokros the documented terms of the transaction. Thomas' failure to specify an annual percentage rate may be cast in a similar light. Moreover, assuming (most favorably to Bokros) that Thomas knew the loan was subject to TILA yet induced Bokros to execute the Affidavit, Thomas may be charged with attempting to conceal from Bokros the availability of TILA remedies, including TILA § 1635 rescission.[7]

But as to Associates (the party to *this* lawsuit) Bokros has made no particular allegations (as required by Rule 9(b)) indicating fraudulent concealment. He alleges only (1) Associates knew or should have known the specification of the principal amount on the Note had been altered and (2) by virtue of receiving a copy of the Affidavit, Associates had reason to know Bokros had received no notice of his right to rescind. Those facts, Bokros contends, evince a reckless disregard for his rights and indicate Associates furthered the concealment.

■ Even were it assumed the irregularities and omissions in the Note should have raised some doubt on Associates' part about Thomas' diligence and care in documenting the loan, those deficiencies themselves are not badges of fraud. It requires an impermissible leap of faith to move from the notion Associates might have been put on inquiry of possible irregularities in its assignor's handling to the conclusion *it* engaged in fraudulent concealment.

Moreover any argument Associates might have been charged with doubts as to Thomas' compliance with TILA requirements is dispelled by the existence of the Affidavit, in which Bokros himself represented the loan was not a consumer transaction. Bokros' contention that Associates' receipt of the Affidavit put it on notice Bokros had received no notice of his "right" to rescind subsumes an assumption he *had* such a right—an assumption negated by the Affidavit itself. That argument is impermissibly circular. Nothing in the Complaint alleges, or creates the reasonable inference, Associates had reason to doubt the accuracy or validity of the Affidavit.[8]

■ In short, on Bokros' own allegations Associates took no affirmative steps to conceal from Bokros his TILA § 1635 rights, nor do the alleged facts reasonably imply a deliberate failure by Associates to investigate a patently suspect transaction. At worst (and even this requires a stretching of the facts) Associates must be viewed as involved in "mere nondisclosure"—conduct, in other words, not rising to the level of

---

7. This aspect of the analysis raises an intriguing question. From the language of the printed form Affidavit (see Appendix A), it seems clear Thomas wanted to document the loan's qualification as a "business loan," thus rendering inapplicable the Illinois usury law. If it were assumed Thomas' intent in that respect was fraudulent (because it knew the loan was not solely a "business loan" under the Illinois statute), and if

the affidavit and Thomas' intent were not aimed at TILA exemption at all, would that render Thomas' conduct "fraudulent concealment" for TILA purposes? In light of the conclusions in this opinion, that question need not be reached.

8. See the representations in Appendix A. It is wholly unexceptionable for a $20,000 loan to have been required for the purposes Bokros himself represented on the face of the Affidavit.

fraudulent concealment. *Davis*, 523 F.Supp. at 1126.[9]

### Conclusion

Bokros is not entitled to claim TILA's protection, for his loan was excluded under TILA § 1603(1). And even were that not so, his right to rescind the loan as against Associates would be barred by the three-year statute of limitations under TILA § 1635(f). Bokros' TILA § 1635 claim thus fails as a matter of law. Lacking any other basis for federal jurisdiction, this Court is also without power to hear Bokros' pendent state claims. Bokros' motion to vacate the order dismissing his Complaint and this action is denied.

### APPENDIX A

### ROBERT THOMAS AND ASSOCIATES, INC.

Mortgage Consultants

215 North Arlington Heights Road

Arlington Heights, Illinois 60004

STATE OF ILLINOIS

COUNTY OF COOK

### AFFIDAVIT

I, Csaba Bokros of the City of Streamwood, County of _____, State of Illinois, being duly sworn, to dispose and say that I own and operate a business known as Bokros Trucking, located at 714 Ridge, Illinois; that the purpose of the loan applied for by me is soley for the purpose of carring on such business and the proceeds will be used for such purpose and for no other. I, the undersigned, warrant that I am in the trucking business; that the proceeds of this loan will be used for working capital for such business and to pay business debts of such business; that I make this AFFIDAVIT of my own free will and that it is soley induce ROBERT THOMAS &

ASSOCIATES, INC. to grant a certain loan to me for business exclusively. I am not a corporation, I D B A Bokros Trucking. The funds from ROBERT THOMAS & ASSOCIATES, INC. were used for my business in the following manor: down payment on tractor trailer.

Mr. Csaba Bokros /s/
Mrs. [signature illegible]

Subscribed and Sworn before me this date 7/11/79

[signature illegible]
NOTARY PUBLIC

---

**9.** Bokros has not argued the absolute terms of TILA § 1641(c), preserving a debtor's rescission right even as against an assignee, could authorize holding Associates for Thomas' fraud. Any such assertion would ignore the essence of the fraudulent concealment doctrine as a doctrine of *equitable* tolling, applicable when the balance of equities favors relief for the out-of-time plaintiff. Such a balancing of equities would justify relief as to Thomas, but certainly not as to Associates.