Donald D. DIEHL and Laurie S. Diehl, Plaintiffs,

v.

The ACRI COMPANY, Metrobank, and Shirley A. Holmberg, Defendants.

Shirley A. HOLMBERG, Counter–Plaintiff,

v.

Donald D. DIEHL and Laurie S. Diehl, Counter–Defendants.

No. 92–1224.

United States District Court, C.D. Illinois.

Sept. 26, 1995.

Barry M. Barash, Barash Stoerzbach & Henson, Galesburg, IL, for Donald D. Diehl, Laurie S. Diehl.

James H. Schultz, Winstein Kavensky & Wallace, Rock Island, IL, Hector L. Lareau, Snyder & Schwarz P.C., Rock Island, IL, for ACRI Company.

Robert P. Swanson, Blackwood Nowinski Huntoon & Swanson P.C., Moline, IL, for Shirley A. Holmberg.

## ORDER

McDADE, District Judge.

Magistrate Judge Kauffman made a Report and Recommendation [Doc. # 95] denying two separate motions by Defendants to dismiss this case for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1). Before the Court are Defendant ACRI's Objection to Magistrate's Report and Recommendation [Doc. # 96] and Defendant Holmberg's Objection to Magistrate's Report and Recommendations Regarding Defendant Holmberg's Motion to Dismiss for Lack of Subject Matter Jurisdiction [Doc. # 99]. The Court, pursuant to 28 U.S.C. § 636(b)(1)(C), shall undertake a *de novo* determination of those portions of the recommendation to which objections were made.

## BACKGROUND [1]

On May 8, 1989, Plaintiffs Donald D. Diehl and Laurie S. Diehl ("Diehl") entered into an agreement with Defendant the ACRI Company ("ACRI") to purchase windows for their home. Two contracts, both dated May 8, 1989, were signed by the parties. One of the contracts was handwritten and stated that Plaintiffs were giving ACRI a security interest only in the windows purchased from ACRI. The other contract was typed and stated that Plaintiffs were giving ACRI a security interest in both the windows purchased from ACRI and in Plaintiff's residence (i.e. a second mortgage). Plaintiffs' signatures on the real estate mortgage were certified by Defendant Shirley A. Holmberg ("Holmberg"), a notary public and an employee of ACRI.

While all of the parties agree that Plaintiffs' true signatures appear on both contracts and on the mortgage, they sharply disagree on precisely how the contracts and mortgage were signed and whether Plaintiffs understood that a mortgage was being taken on their residence. Plaintiffs claim that they just signed a group of papers without reading them and that ACRI never gave them a copy of the mortgage or the typed contract. Thus, it was not until Plaintiffs filed for bankruptcy that they first learned of ACRI's mortgage interest in their residence. Defendants assert that they did give Plaintiffs a typed version of the contract along with all the required notices and statements.

Plaintiffs filed a four-count Complaint against Defendants on May 8, 1992, pursuant to the Truth In Lending Act (TILA), 15 U.S.C. § 1635(b) [Count I]; the Illinois Consumer Fraud and Deceptive Business Practices Act, Ill.Rev.Stat.1987, ch. 121 1/2, § 261 et. seq. [Count II]; the Illinois Commercial Code, Ill.Rev.Stat.1987, ch. 26, § 3–407(2) [Count III]; and the Illinois Notary Public Act, Ill.Rev.Stat.1987, ch. 102, § 201–101 et. seq. Plaintiffs moved for summary judgment, but the Court denied that motion in an Order dated December 3, 1993. Defendants now move to dismiss Plaintiffs' TILA claim pursuant to Fed.R.Civ.P. 12(b)(1) based upon the running of the statute of limitations period.

## ANALYSIS

Defendants seek to dismiss Plaintiffs' rescission claim under TILA for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1). On such a motion, Plaintiffs have the burden of proof that jurisdiction does in fact exist. *Kontos v. United States Dept. of Labor,* 826 F.2d 573, 576 (7th Cir.1987); *Western Transp. Co. v. Couzens Warehouse & Dist., Inc.,* 695 F.2d 1033, 1038 (7th Cir.1982) *quoting Mortensen v. First Federal Savings and Loan Ass'n.,* 549 F.2d 884, 891 (3d Cir.1977). Moreover, it is proper for the district court to look beyond the jurisdictional allegations in the Complaint and to view whatever evidence has been submitted in determining

1. For a more complete version of the facts in this case, see this Court's Order of December 3, 1993.

whether it has subject matter jurisdiction over the case. *Roman v. United States Postal Serv.,* 821 F.2d 382, 385 (7th Cir.1987).

### Rescission Claim

■ Plaintiffs claim an action for rescission under 15 U.S.C. § 1635. Regulation Z, which interprets this section, requires that a consumer exercise his right to rescission within three business days from either the date of consummation, delivery of notice of the right to rescind, or delivery of all material disclosures, whichever occurs last. 12 C.F.R. § 226.23(a). However, if the notice of right to rescind or material disclosures are not delivered, then the consumer has three years after consummation to bring a rescission action. 15 U.S.C. § 1635(f); 12 C.F.R. § 226.23(a).

In its previous Order of December 3, 1993, this Court made clear that the three-year period of limitations found in 15 U.S.C. § 1635(f) does not apply to the instant case because the term "material disclosure," as defined in 12 C.F.R. § 226.23(a)(3) n. 48, does not include disclosure of a security interest. *Diehl v. The Acri Co.,* 92–1224, 1993 WL 818766 (Dec. 3, 1993), at 9–10. Plaintiff has not convinced the Court that its previous holding was improper.[2] Thus, Plaintiff can only premise jurisdiction in this Court on the three day statute of limitations found in Regulation Z.

■ Of course, Plaintiffs' TILA claims do not literally fall within the three-day statute of limitations because they were brought on May 8, 1992, a full three years after consummation of the transaction on May 8, 1989.[3] However, Plaintiffs assert that the doctrine of equitable tolling should be applied to this case in order to toll the statute of limitations in their favor. TILA is subject to equitable tolling in cases where fraudulent concealment is alleged. *King v. California,* 784 F.2d 910 (9th Cir.1986), *cert. denied,* 484 U.S. 802, 108 S.Ct. 47, 98 L.Ed.2d 11 (1987); *Jones v. TransOhio Sav. Ass'n.,* 747 F.2d 1037 (6th Cir.1984); *Bokros v. Assoc. Finance, Inc.,* 607 F.Supp. 869 (N.D.Ill.1984). In our previous Order, the Court found that issues of disputed fact existed so as to preclude summary judgment for Plaintiff on the rescission issue. *Diehl v. The Acri Co.,* 92–1224, 1993 WL 818766 (Dec. 3, 1993), at 11–12.

■ Nevertheless, the case stands in a very different procedural posture at this stage of the litigation. Unlike a motion for summary judgment, where the Court must leave issues of disputed material fact for the jury, Fed.R.Civ.P. 56, a 12(b)(1) motion to dismiss allows the Court to itself decide issues of disputed material fact. *Crawford v. United States,* 796 F.2d 924, 927–28 (7th Cir.1986). The Seventh Circuit has presented a strong preference for district courts to resolve all jurisdictional issues prior to trial on the basis that "no case can properly go to trial if the court is not satisfied that it has jurisdiction." *Id.* at 928. No format is specified by statute or rule for evidentiary hearings on jurisdiction; any rational mode of inquiry will do. *Id.* at 929. The Seventh Circuit suggests that the district court look to the documents submitted by the parties and, "treating the summary judgment procedures in Fed.R.Civ.P. 56 loosely as a form of trial by affidavit, the court may look to those procedures for guidance in organizing a documentary inquiry into jurisdiction."[4] *Id.* at 928.

---

**2.** Plaintiffs argue that they can still prevail because ACRI failed to make sufficiently clear its "notice of right to cancel." Plaintiffs argue that listing the terms "mortgage, lien or other security interest" alternatively rather than bracketed with the proper term circled (as shown in the Regulation Z model form) rendered the notice deceptive. The Court rejects that argument. The actual notice in this case reads, "You are entering into a transaction that will result in a mortgage, lien or other security interest (for example, a mechanic's lien) *on your home.*" (emphasis added). The Court finds that such language is not sufficiently misleading to constitute defective notice. Whether reference was made to a mortgage, lien or security interest, Plaintiffs should have been aware that their home was in jeopardy.

**3.** It is disputed whether May 8, 1989 or May 12, 1989 was the actual date of consummation. However, this fact is irrelevant in light of the Court's finding that the three-year statute of limitations is inapplicable to this case.

**4.** Moreover, if oral testimony is necessary, the district court should "hold a hearing at which the necessary witnesses will testify." *Crawford,* 796 F.2d at 929. However, such a hearing is not required in every case. "Often the only evidence

■ The Court finds that under the jurisdictional standard of Rule 12(b)(1), Plaintiffs' equitable tolling claim must fail. Even if equitable tolling did apply in this case, it would only toll the three day statute of limitations until Plaintiffs discovered ACRI's second mortgage on their home. As noted in the Court's previous Order, "Plaintiffs were aware of the existence of ACRI's security interest in their residence at least as early as February 4, 1992." *Diehl v. Acri,* 92–1224 (Dec. 3, 1993), at 12 n. 6. In a letter to ACRI dated February 4, 1992, from the Diehls' attorney, Richard E. Barber, Barber stated, "I represent Don and Laurie Diehl. You claim to have a mortgage against their property." Affidavit of Ben Acri, § 3, Def. Ex. 15. The letter went on to offer a $1,000 settlement of ACRI's mortgage claim. *Id.*

This letter shows that Plaintiffs were on notice of ACRI's claimed security interest in their residence at least as early as February 4, 1992. Plaintiffs have offered no evidence to rebut this fact, and it is their burden to do so on a 12(b)(1) motion. *Kontos,* 826 F.2d at 576; *Western Transp.,* 695 F.2d at 1038. Because Plaintiffs did not file their rescission claim until May 8, 1992, the three-day limitation period had already expired.[5] Thus, Plaintiffs' rescission claim was untimely filed and this Court has no jurisdiction to consider it. The Court dismisses the rescission claim of Count I with prejudice.

### *Non–Tracking Claim*

■ Plaintiffs also argue that they alleged a "non-tracking" claim in their Complaint pursuant to 15 U.S.C. § 1638(a)(9) and Regulation Z, 12 C.F.R. § 226.18(m). That statute requires that all property covered by a security interest be disclosed. The remedy for such a claim is damages in the amount of twice the finance charge but not less than $100 nor more than $1,000, as well as costs and reasonable attorney's fees. 15 U.S.C. §§ 1640(a)(2)(A)(i) & 1640(a)(3). Plaintiffs

claim that they alleged the facts necessary for such an action when they pled:

> In plaintiffs' Exhibit 1, the only claimed (or disclosed) security interest was in the "goods or property being purchased" (i.e., the windows), whereas, in plaintiffs' Exhibit 3, the mortgage, in addition to the goods and property being purchased, the mortgage discloses the consumers gave a security interest in the nature of a mortgage on their principal residence in Abingdon, Illinois.

*Complaint, Common Count, at § 9.*

■ Defendants argue that the Court should find that Plaintiffs have not sufficiently pled a non-tracking claim because Count I of Plaintiffs' Complaint explicitly requests only rescission of the transaction pursuant to 15 U.S.C. § 1635(b). However, the Seventh Circuit has made clear that "[i]nstead of asking whether the complaint points to the appropriate statute, a court should ask whether relief is possible under any set of facts that could be established consistent with the allegations." *Bartholet v. Reishauer A.G.,* 953 F.2d 1073, 1078 (7th Cir.1992). Thus, specifying an incorrect legal theory is not fatal to a complaint so long as the facts alleged establish the foundation for a correct legal theory. *Id. See also Travis v. Boulevard Bank N.A.,* 880 F.Supp. 1226, 1229 (N.D.Ill.1995) (holding that failure to identify which provisions of TILA were violated is not valid grounds to dismiss the Complaint). The Court finds that the facts alleged in Plaintiffs' Complaint are sufficient to state a non-tracking claim.

Plaintiffs do not make clear whether they are seeking damages or only rescission by asserting a non-tracking claim. If they are seeking rescission alone, the non-tracking claim is barred by the three-day limitations period, as discussed above.[6] However, if Plaintiffs are now seeking damages pursuant to § 1640(a)(2)(A)(i), the one-year statute of

---

necessary to resolve a jurisdictional issue is documentary." *Id.* at 928–29.

5. The May 8, 1992, Complaint clearly alleged, "This complaint is consumers' notice of rescission." Complaint, Count I, at § 1.

6. Plaintiffs' argument on summary judgment was that failure of Defendants to make a timely response to the rescission notice set in motion the independent one-year statute of limitations in § 1640(e). However, in light of the Court's finding that Plaintiffs' rescission notice was not timely filed, such an argument is moot.

limitations of § 1640(e) is applicable to this claim. The cause of action accrued on May 8, 1989, when the security agreement was signed. Yet, the instant claim was not filed until May 8, 1992. Thus, to fall within the one-year statute of limitations, Plaintiff must be able to assert equitable tolling.

 Equitable tolling, in turn, depends upon a showing that Defendants fraudulently concealed the mortgage interest from Plaintiffs. *King*, 784 F.2d at 910; *James*, 747 F.2d at 1037; *Bokros*, 607 F.Supp. at 869. Fraudulent concealment requires more than mere nondisclosure. *Bokros*, 607 F.Supp. at 873–74. It requires proof of fraudulent intent by Defendants as well as due diligence by Plaintiffs.[7] *Hubbard v. Fidelity Federal Bank*, 824 F.Supp. 909, 920 (C.D.Cal.1993); *Bokros*, 607 F.Supp. at 874. Because this is a 12(b)(1) action, the Court may decide the factual issues in order to determine whether it has jurisdiction over this action. *Crawford*, 796 F.2d at 927–28. Moreover, the burden of proof is upon Plaintiffs to show Defendant's fraudulent concealment as well as their own due diligence. *Kontos*, 826 F.2d at 576; *Western Transp.*, 695 F.2d at 1038. The Court finds that Plaintiffs have not sufficiently met this burden.

The Diehls signed a number of documents that evidence a mortgage on their residence.[8] First, they signed a typed security agreement, dated May 8, 1989, which states, "Buyers are giving a security interest in ... the land located at 604 N. Austin Abingdon, Il." Def. Dep. Ex. 2. Second, they signed a document entitled "Mortgage Verification Authorization." Def. Dep. Ex. 4. Third, they signed a document entitled "REAL ESTATE MORTGAGE," dated May 8, 1989, which states as follows:

> "This indenture witnesseth that Donald D. & Laurie S. Diehl of 604 N. Austin City of Abington State of Illinois, Mortgagor(s) MORTGAGE and WARRANT to The Acri Company of 124 E. 18th St. Milan Il. 61264 to secure payment of that certain Home Improvement Retail Installment Contract of even date herewith ... the following described real estate, to wit: Austin's Addition, Lot # 3, Block # 10 Parcel # 1333401007."

Def. Dep. Ex. 6. Fourth, the Diehls signed a notice of right to cancel, dated May 8, 1989, stating, "You are entering into a transaction that will result in a mortgage, lien or other security interest (for example, a mechanic's lien) on your home." Pl. Complaint Ex. 2. Plaintiffs now assert that Defendants fraudulently concealed from them the existence of a mortgage on their property. The Court cannot agree.

The only proof of fraudulent concealment offered by Plaintiffs is that they never received a copy of the typed contract indicating that a mortgage had been taken on their home. However, it is clear that they signed that very document. If, as Plaintiffs assert, they signed the contract when it was blank, then they were not acting in a diligent manner. Reasonable persons do not sign blank contracts, especially when they have signed

---

7. In fact, the Seventh Circuit has made a distinction between "fraudulent concealment" and "self-concealing fraud." *Martin v. Consultants & Adm'rs, Inc.*, 966 F.2d 1078 & n. 17 (7th Cir. 1992). Fraudulent concealment means that the defendant must have engaged in further acts of concealment independent of the original act in order to trigger the tolling doctrine. Self-concealing fraud means that the defendant engages in some misleading or deceptive scheme during the course of committing the original wrong that is designed to mask the existence of a cause of action. *Id.* at 1094. Tolling applies whether there is concealment of either type. However, due diligence by the plaintiff is required only in the case of self-concealing fraud. *Id.* at 1094 n. 17.

The doctrine of self-concealing fraud is applicable to the instant case. Plaintiffs' main contention is that until the filing of the instant lawsuit, they had never received a copy of the typed contract which added a security interest in their residence. This concealment is directly related to the alleged underlying fraud in this case—that Defendants added the security interest to the typed contract without Plaintiffs' knowledge. Thus, due diligence by Plaintiffs is a requirement for equitable tolling here. *Id.*

8. The Court refuses to credit Mr. Diehl's deposition testimony that he did not sign the forms in question. Donald Diehl Dep. at 38–54. Not only is Mr. Diehl's signature the same as his signatures on the other exhibits, Mrs. Diehl even testified that the signature was that of her husband. Laurie Diehl Dep. at 51–52.

another copy of the same contract that was filled out in their presence. Perhaps the Diehls signed the blank contract in the belief that ACRI would type the handwritten terms of the first contract onto the second blank contract. However, a reasonable person would have waited for the typed contract to arrive in the mail before signing it. Moreover, for three years, Plaintiffs never requested a copy of the second contract that they had signed in blank. This is not the behavior expected of a diligent consumer.[9]

Even assuming *arguendo* that it was reasonable for the Diehls to sign a blank security agreement, the Court does not see how Plaintiffs could have signed the document entitled "REAL ESTATE MORTGAGE" and not have been aware that they had given ACRI a mortgage on their home. Windows are not "real estate"; a residence or land is real estate. The Diehls also signed the "Mortgage Verification Authorization." Mrs. Diehl testified that she understood that a mortgage pledges the residence and land as collateral for the note. Laurie Diehl Dep. at 13. In fact, the ACRI transaction involved a second mortgage because there already was a mortgage on the Diehls' home. *Id.* Moreover, the notice of right to cancel explicitly refers to a "mortgage, lien or other security interest ... *on your home.*" (emphasis added).

■ Mr. Diehl admitted in his deposition he did not read the documents that he and his wife had signed. Donald Diehl Dep. at 31, 46. Mrs. Diehl testified that she did not pay attention to what ACRI's salesperson told them because she let her husband make the decisions. Laurie Diehl Dep. at 17. Plaintiffs' counsel's characterization of the Diehls as "uneducated people" does not excuse their lack of diligence here. Due diligence must be judged from an objective standard in order to give that requirement any real meaning. *See, e.g., Hubbard,* 824 F.Supp. at 920 (holding that the debtors in a TILA action had a "reasonable opportunity to discover the exact nature of their loan.").

Moreover, even if the inquiry were a subjective one, the record reveals that Mrs. Diehl graduated from high school and Mr. Diehl has a tenth grade education. The Diehls' lack of a college education does not make them "uneducated." If it did, most of the citizens of this country could be so designated.

The Diehls' testimony that they never read the documents leads the Court to believe that the documents were not blank when they signed them; rather, the Diehls simply did not pay attention to the terms of their agreement. It is Plaintiffs' burden of proof here to demonstrate that Defendants fraudulently concealed the mortgage from them. If Plaintiffs did not even read those documents, how can they prove that the documents did not already contain the mortgage interest when they signed them? Not only have Plaintiffs not met their burden of proving due diligence on their part, they have also failed to adequately prove that Defendants engaged in active concealment of the mortgage on their residence. Thus, the Court finds that the statute of limitations should not be equitably tolled, and the Court lacks jurisdiction over Plaintiffs' TILA claims. Plaintiffs' nontracking claim in Count I is dismissed with prejudice.

### *State Law Claims*

■ In order to exercise pendent, or supplemental, jurisdiction over Plaintiffs' state law claims, the Court must have an independent source of federal subject matter jurisdiction. *Kauth v. Hartford Ins. Co. of Illinois,* 852 F.2d 951, 954 (7th Cir.1988) *citing United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). In light of the Court's holding that it does not have subject matter jurisdiction over Plaintiffs' TILA claims, the Court cannot assert supplemental jurisdiction over Plaintiffs' state law claims in Counts II, III and IV. Thus, those claims are dismissed without prejudice.

---

9. This case is distinguishable from *Bokros* in which the court found that the defendant's failure to send the plaintiff a copy of their modified agreement constituted fraudulent concealment.

607 F.Supp. at 874. Unlike in that case, Plaintiffs here actually signed a copy of the modified agreement containing the mortgage.

*Defendants' Counterclaims*

Both Defendants request that they be reimbursed for the out-of-pocket expenses of this suit on the basis that the suit is frivolous. Moreover, Defendant ACRI has asked for punitive damages and moved for Rule 11 sanctions against Plaintiffs' counsel. The Court finds that this suit was not so frivolous as to lack a good faith basis in law or fact. Thus, Defendants' counterclaims are dismissed with prejudice. Each party shall bear their own costs.

## CONCLUSION

IT IS THEREFORE ORDERED that Defendant ACRI's Objection to Magistrate's Report and Recommendation [Doc. # 96] is **SUSTAINED.**

IT IS FURTHER ORDERED that Defendant Holmberg's Objection to Magistrate's Report and Recommendations Regarding Defendant Holmberg's Motion to Dismiss for Lack of Subject Matter Jurisdiction [Doc. # 99] is **SUSTAINED.**

IT IS FURTHER ORDERED that Magistrate Judge Kauffman's Report and Recommendation [Doc. # 95] is **REJECTED.**

IT IS FURTHER ORDERED that Count I of Plaintiffs' Complaint is **DISMISSED with prejudice.**

IT IS FURTHER ORDERED that Counts II, III, and IV of Plaintiffs' Complaint are **DISMISSED without prejudice.**

IT IS FURTHER ORDERED that Defendants' Counterclaims are **DISMISSED with prejudice.**

IT IS FURTHER ORDERED that all other pending motions before this Court and the Magistrate Judge in this case are **DISMISSED.** This case is **TERMINATED,** each party to bear their own costs.