NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-2214, 09-2215 & 09-2367
_____

JENNIFER ST. HILL,
                    Appellant (No. 09-2214)

v.

TRIBECA LENDING CORPORATION;
LASALLE BANK NATIONAL ASSOCIATION;
LITTON LOAN SERVICING; FINANCIAL &
CONSULTING STRATEGIES, INC.

                    LASALLE BANK NATIONAL,
                    Appellant (No. 09-2215)

                    TRIBECA LENDING CORPORATION,
                    Appellant (No. 09-2367)
_____

On Appeal from the United States District Court
For the Eastern District of Pennsylvania
(D.C. Civil Action No. 2-07-cv-05300)
District Judge:  Honorable Juan R. Sanchez
_____

Submitted Under Third Circuit LAR 34.1(a)
November 15, 2010
_____

Before:  AMBRO, FISHER, and GARTH, Circuit Judges

(Opinion filed: December 8, 2010)
_____

OPINION
_____

AMBRO, Circuit Judge

Debtor Jennifer St. Hill appeals from the District Court's decision after trial that neither the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, nor the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. § 201-1 *et seq.*, entitles her to rescind her mortgage in favor of Tribeca Lending Corporation ("Tribeca"). St. Hill also appeals the District Court's order denying her claims for money damages against Financial & Consulting Strategies, Inc. ("FCS"), under Pennsylvania's Credit Services Act ("CSA"), 73 P.S. § 2181, *et seq.*, and Loan Broker Trade Practice Regulations ("LBTPR"), 37 Pa. Code § 305.1. She appeals as well the District Court's rejection of her fraud-related claims under the UTPCPL. Tribeca cross-appeals the District Court's ruling that it violated the TILA by failing to disclose the fees that St. Hill paid her mortgage broker. For the reasons that follow, we affirm the District Court's rejection of rescission, though for a different reason.[1]

## I. Background

St. Hill obtained a home mortgage loan from Tribeca for $1.3 million that she now seeks to rescind. In 2004, she experienced financial difficulty in connection with her debt collection business, and filed for Chapter 7 bankruptcy. In 2006, St. Hill decided to refinance her home mortgage to pay her trustee in bankruptcy to satisfy the creditors of her business. To that end, a friend referred St. Hill to Francis Kilson, who provided general financial advice but was not a mortgage broker. Kilson then introduced St. Hill to David Diamond, who worked for FCS as a mortgage broker. Diamond arranged the

---

[1] The other parties affected are LaSalle Bank National Association (current holder of the mortgage) and Litton Loan Servicing (the servicer for LaSalle).

loan with Tribeca. At the outset, St. Hill agreed with Kilson to a charge of $13,500 for his services, but the payment was not to come out of the loan proceeds. St. Hill also entered into a brokerage contract with Diamond, in which she agreed to pay him $13,000.

In the course of the transaction (and prior to closing), Tribeca's loan officer, Adam Turkewicz, told Diamond and St. Hill that Diamond would have to waive his fees in order to proceed with the particular type of loan that was arranged for St. Hill. The District Court found that Turkewicz told both Diamond and St. Hill that Diamond would have to pursue his fees outside the settlement papers. St. Hill paid Diamond $6,500 a few days after settlement and $6,500 or $7,000 (the amount is disputed) over the course of the year after settlement.

Fourteen months after closing the loan, St. Hill attempted to rescind it on the ground that there were disclosure violations. After a two-day bench trial, the District Court determined that St. Hill was not entitled to rescind the loan. It also concluded that the TILA did not require disclosure of Kilson's fees because he was not a mortgage broker. However, because the TILA requires disclosure of all finance charges, which are defined by the statute's implementing regulation (Regulation Z) as any "fees charged by a mortgage broker," the Court found that Tribeca had violated the TILA by failing to disclose Diamond's broker fees. Nonetheless, it concluded that St. Hill could not recover damages because the one-year limitations period for recovery had elapsed. The District Court also rejected St. Hill's claims under the UTPCPL.[2]

---

[2] Prior to trial, the District Court granted partial summary judgment in favor of FCS on St. Hill's CSA and LBTPR claims.

## II.  Jurisdiction and Standard of Review

The District Court had jurisdiction under 28 U.S.C. § 1331, the TILA, 15 U.S.C. § 1640(e), and the Real Estate Settlement Practices Act, 12 U.S.C. § 2614.  It also exercised supplemental jurisdiction over St. Hill's state law claims under 28 U.S.C. § 1367(a).  We have jurisdiction over a final order from the District Court under 28 U.S.C. § 1291.

"On the appeal of a bench trial, we review a district court's findings of fact for clear error and its conclusions of law *de novo*."  *McCutcheon v. Am. Servicing Co.*, 560 F.3d 143, 147 (3d Cir. 2009).

## III.  Discussion

### A.  St. Hill's rescission claims

St. Hill argues that she has a right to rescind her loan under both the TILA and the UTPCPL's Door-to-Door Sales Act provision, 73 P.S. § 201-7.  As bases for rescission, she claims that Tribeca under-disclosed the financing charges in connection with Diamond's and Kilson's fees and made other disclosure violations in connection with the adjustable interest rate and the Notice of Right to Cancel.[3]  The District Court held that

---

[3]     Though we do not reach the issue (as we conclude the TILA does not apply), we agree with the District Court that, even if the TILA were applicable, Kilson's fees are not finance charges subject to disclosure.  Kilson is not a mortgage broker subject to the TILA; he is simply a "third party" for its purposes.  Per Regulation Z, the TILA requires disclosure of third-party fees only if the lender "*requires* the use of a third party as a condition of or an incident to the extension of credit, even if the consumer can choose the third party; or [the lender] retains a portion of the third-party charge, to the extent the portion is retained."  12 C.F.R. § 226.4(a)(1) (emphasis added).  In this context, we make no further reference to St. Hill's arguments concerning Kilson.

4

St. Hill was not entitled to rescind the loan because she had received the requisite disclosures, with the exception of Diamond's fees. As for the latter, the failure to disclose Diamond's fees violated the TILA. However, no remedy existed, as St. Hill filed her claim too late.

We agree with the District Court that neither the TILA nor the UTPCPL supports St. Hill's arguments for rescission, but for a different reason. We believe that neither statute applies to the transaction here because St. Hill's loan was principally for business, not consumer, purposes. Therefore, we do not reach the question of whether St. Hill would be entitled to rescind if either statute applied.

The TILA and the UTPCPL (including the Pennsylvania Door-to-Door Act) apply only to consumer credit transactions. Under the TILA, consumer credit means credit "offered or extended" to a consumer "primarily for personal, family, or household purposes." 15 U.S.C. § 1602(h); *see* 12 C.F.R. § 226.2(12). Similarly, the UTPCPL is limited to the same transactions. 23 P.S. § 201-9.2(a). The TILA does not apply to "[c]redit transactions involving extensions of credit primarily for business, commercial, or agricultural purposes." 15 U.S.C. § 1603(1).

In this regard, whether we reach the merits of St. Hill's claims depends on the loan's primary purpose. Was it is personal or commercial? Our inquiry goes to the "transaction as a whole." *See Gombosi v. Carteret Mortg. Corp.*, 894 F. Supp. 176,

---

By contrast, as a mortgage broker, the "[s]pecial rule" on "mortgage broker fees" applied to Diamond and FCS. *Id*. § 226.4(a)(3). It requires that any "[f]ees charged by a mortgage broker . . . are finance charges even if the creditor does not require the consumer to use a mortgage broker and even if the creditor does not retain any portion of the charge." *Id*.

181 (E.D. Pa. 1995). Even if a transaction has some personal purpose, the TILA does not necessarily apply. *Quinn v. A.I. Credit Corp.*, 615 F. Supp. 151, 154 (E.D. Pa. 1985). Moreover, several courts have agreed that simply because the loan is secured by a family home does not mean that the loan was primarily personal. *See, e.g.*, *Sherrill v. Verde Capital Corp.*, 719 F.2d 364, 367 (5th Cir. 1983); *Bokros v. Assocs. Fin., Inc.*, 607 F. Supp. 869, 872 (N.D. Ill. 1984); *In re DiPietro*, 135 B.R. 773, 777 (Bankr. E.D. Pa. 1992).

To prevail on a TILA claim, St. Hill had the burden of showing that the Act applied to her case.[4] *See Katz v. Carte Blanche Corp.*, 496 F.2d 747, 751 (3d Cir. 1974). We do not believe that she proved at trial that the primary purpose of her loan was sufficiently consumer-oriented to put it within the ambit of the TILA.

The record shows that, though St. Hill's home served as collateral, the purpose of the loan was to pay her business creditors. Prior to the refinancing, St. Hill used her home as collateral for her business debts. When her business ran into trouble, she had to file for personal bankruptcy to protect her home. She testified that "the *sole reason* for . . . getting the refi[nancing] was because the house had increased in value and [she] wanted

---

[4] She claims that Tribeca waived the argument that the TILA does not apply because it both "admitted" this in its answer and failed to raise the claim until a post-trial submission. We disagree. To the former, we are not bound by a party's admissions "concerning questions of law." *Mintz v. Am. Gen. Fin. Servs.*, 434 F.3d 222, 228 (3d Cir. 2006). To the latter, "[t]he purpose of requiring the defendant to plead available affirmative defenses in his answer is to avoid surprise and undue prejudice by providing the plaintiff with notice and the opportunity to demonstrate why the affirmative defense should not succeed." *In re Sterten*, 546 F.3d 278, 285 (3d Cir. 2008) (quoting *Robinson v. Johnson*, 313 F.3d 128, 134-35 (3d Cir. 2002)). We do not believe that disagreement over this threshold issue could possibly shock St. Hill, a person skilled in debt collection matters.

to pay off the *trustee and . . . the creditors. There was no other reason . . . .*" App. 949-50 (emphases added). In light of this evidence, the District Court found that St. Hill needed the loan "for the trustee to satisfy her business creditors during a Chapter 7 bankruptcy." For St. Hill, the likely alternative to refinancing was the seizure of her home as an asset in bankruptcy. In short, her business debts were the but-for cause of the loan.

St. Hill points out that only 29% of the loan went directly to her creditors. The rest of the principal went to settlement charges, the satisfaction of a pre-existing mortgage, taxes and liens, and the trustee's fees and commission. However, we do not believe that these other payments indicate the loan's primary purpose. The District Court in *Gombosi* encountered a similar situation. There, as here, the Gombosi family had refinanced their home and a portion of the proceeds were used to pay off business loans. It was clear to the Court that the Gombosis did not refinance to obtain a lower interest rate or lower monthly payments. Also, the satisfaction of the prior mortgage was a necessary condition of the second loan. With respect to fees and taxes, the Court stated that "[s]ince these costs would have been incurred whatever the purpose of the loan, we find that they do not carry any weight in the determination of the primary purpose of this transaction." 894 F. Supp. at 181. It concluded that

> [a]ll these facts indicate that the refinancing of an existing residential mortgage and the making of tax payments were not the primary purpose of the . . . loan. Rather, the primary purpose of the . . . loan was to acquire the remaining proceeds after the satisfaction of all the conditions of obtaining the loan. Thus, we find that the disposition of those *remaining proceeds* must weigh heavily in determining the primary purpose of the . . . loan.

*Id.* (emphasis added).

In our case, refinancing was obviously not the primary purpose of the $1.3 million Tribeca loan, as it resulted in a higher interest rate and higher monthly payments (as in *Gombosi*). Also, the $738,634.59 payment to satisfy the existing mortgage was an express condition of the Tribeca loan—again, not the primary purpose. Finally, the settlement charges, taxes, fees, and commission would have been paid regardless of the loan's purpose or the nature of the bankruptcy debts. Thus, as in *Gombosi*, we are persuaded that the destination of the remaining proceeds is the most relevant consideration in the designation of the loan as consumer or commercial.

Turning to our facts, after satisfying the pre-existing mortgage ($738,634.59), the bankruptcy trustee's fees and commission ($137,500), settlement charges ($75,558.29), and other taxes and liens against the home (about $40,000), the remaining balance of $377,533.43 was paid directly to St. Hill's creditors. Though she quibbles that the record does not conclusively show her creditors were business and not consumer, the testimony noted above convinces us they were the former. In the circumstances before us, that St. Hill could only apply 29% of the principal directly toward her commercial liabilities does not detract from our conclusion that the loan's primary purpose was commercial. Therefore, we conclude that the TILA does not apply to St. Hill's loan as a matter of law.

We likewise reject that the Pennsylvania Door-to-Door Act applies to the transaction in this case. As noted above, we do not believe this loan is within the ambit of the UTPCPL because it is not a consumer loan. Even if it were, we also note an additional reason why this transaction is not covered by the Door-to-Door Act.

The Door-to-Door Act protects the consumer at home from solicitation or other inappropriate pressure to assume debt. Here, neither Diamond nor Tribeca solicited St. Hill in her home, personally or by telephone. The only contact with the home was the closing, which was held there. But as the District Court found, the closing was at St. Hill's home office, for her convenience, as it was her principal place of business. Therefore, we conclude that the loan was not entered into as the result of or in connection with in-person contact or a call on St. Hill at her home. We will not stretch the statute to apply to this case.

**Claims against FCS under the CSA and the LBTPR**

St. Hill also argues that the District Court erred in granting summary judgment to FCS on St. Hill's CSA and LBTPR claims for misrepresenting the terms of the loan. We disagree.

We exercise plenary review over the District Court's grant of summary judgment, viewing "the underlying facts and all reasonable inferences therefrom in the light most favorable to the party opposing the motion." *McGreevy v. Stroup*, 413 F.3d 359, 363 (3d Cir. 2005).

As noted by the District Court, the CSA does not apply to FCS. It covers "credit services organizations." 73 P.S. § 2183. They do not, however, include "[a]ny person organized, chartered or holding a license or authorization certificate to make loans or extensions of credit pursuant to the laws of the Commonwealth or the United States who is subject to regulation and supervision by an official or agency of the Commonwealth or

9

the United States." *Id.* § 2182. FCS is a mortgage broker licensed by the Commonwealth and regulated by the Pennsylvania Department of Banking.

The LBTPR covers "[l]oan broker[s]." 37 Pa. Code § 305.2. Excluded from that definition is any "person, copartnership, association or corporation expressly regulated by a regulatory body or officer of this Commonwealth or of the United States, such as State and nationally chartered banks, savings and loan associations and their regulated subsidiaries." *Id.* As FCS is regulated in a manner contemplated by this exclusion, the LBTPR also does not apply to it.

Because neither the CSA nor the LBTPR applies to this case, FCS was entitled to judgment as a matter of law. *See also Parker v. Long Beach Mortg. Co.*, 534 F. Supp. 2d 528, 537-38 (E.D. Pa. 2008) (holding licensed mortgage brokers are not covered by either the CSA or the LBTPR).

**Fraud and the UTPCPL**

St. Hill also appeals the District Court's denial of her fraud claims brought under the UTPCPL against Tribeca and FCS. As noted above, the UTPCPL does not apply to non-consumer transactions. Thus, we do not address these claims.

\*   \*   \*   \*   \*

For the reasons discussed above, though our reasoning differs in part, we affirm the District Court's judgments.